In the Matter of **WALTER W. WILLIS, INC., Bankrupt.**

No. B-69-1035.

United States District Court, N. D. Ohio, E. D.

May 27, 1970.

C. E. Whitmer, John Schwemler, Rich-ard Levin, Akron, Ohio, for Trustee.

Edward Abramson, Akron, Ohio, for Associates Financial Services Corp.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This case involves a petition by the Trustee in Bankruptcy to review the order of the Referee in Bankruptcy granting the petition for reclamation of the creditor, Associates Financial Services Corporation ("Associates"). The Trustee and Associates submitted to the Referee an agreed stipulation of facts. The Referee used this stipulation of facts as his findings of fact. These stipulated facts are as follows:

"1. That the various equipment claimed by Associates Financial Services Corporation from the bankrupt's estate is claimed by virtue of various lease agreements between Motorola

Communications & Electronics, Inc., and WALTER W. WILLIS, INC., which agreements, although purporting to be lease agreements which do not contain any option to purchase, have by separate oral agreement provided an option to WALTER W. WILLIS, INC., to purchase said equipment when all the rental payments have been completed as set forth in the lease agreements.

2. That the type of arrangement set forth in the leases is commonly used by Motorola Communications & Electronics, Inc., in its business dealings with its customers and that the instruments identified as leases are thereafter assigned to various lending agencies and finance companies by Motorola Communications & Electronics, Inc.

3. That said leases, coupled with the oral option agreements to purchase, are, in effect, security agreements although the language contained in said leases does not set forth the provisions normally found in a security agreement.

4. That WALTER W. WILLIS, INC., had, by separate oral agreement, the right to become owner of the equipment under lease, without any additional consideration, at the termination of five (5) years of payments of the contract rental price or sooner if it advanced the full amount of said payments.

5. That these leases were, in effect, conditional sales contracts between the parties although the leases contained no provisions for ownership by the lessee at any time nor did the lessee have any written option to buy in said leases.

6. That said leases were duly assigned by Motorola Communications & Electronics, Inc., to Associates Financial Services Corporation at or about the same time that the leases were negotiated with the bankrupt.

7. That Motorola Communications & Electronics, Inc., prepared and duly filed financing statements on behalf of itself in Portage County, Ohio, the county in which the principal place of business of the bankrupt was situated, and with the Secretary of State in Columbus, Ohio, and that said financing statements were not assigned to Associates Financial Services Corporation, of record.

8. That WALTER W. WILLIS, INC., made a series of payments under the lease agreements to Associates Financial Services Corporation, the last payment being on January 6, 1969.

9. That WALTER W. WILLIS, INC., became in default on payment of said leases in January, 1969, at which time it owed Forty-Four Thousand Eight Hundred Eighty-Four Dollars ($44,884.00) under the lease agreements which is also the present balance which sum includes certain finance charges.

10. That Associates Financial Services Corporation notified the bankrupt by certified mail on January 26, 1969, that it was in default and it demanded its full payment within ten (10) days thereafter which notice was duly received.

11. That the equipment has a lesser value than the present balance due under said leases."

\* \* \*

■■ The above transaction between Motorola Communications and Electronics, Incorporated ("Motorola") and Walter W. Willis, Incorporated ("Willis") is subject to the secured transactions provisions of the Ohio Commercial Code (hereinafter "Code") inasmuch as said transaction was intended to create a security interest. See Ohio Revised Code § (hereinafter "O.R.C. §") 1309.02. The parties, as the stipulated facts suggest, intended their leasing transaction as a security arrangement. The written leases accompanied by the oral option agreements to purchase the equipment without any additional consideration assuredly fulfill the test of a lease intend-

ed as security of O.R.C. § 1301.01 (KK).[1] Thus, the question of whether the leasing transaction was intended as security, which in other cases usually is the prime issue, is not even in dispute in the present case. See, *e.g.,* In re Wheatland Electric Products Co., 237 F.Supp. 820 (W.D.Pa.1964) (lease not intended as security); In re Alpha Creamery Co., 4 Uniform Commercial Code Reporting Service (UCCRS) 794 (Ref. in By. W. D.Mich.1967) (lease not intended as security); In re Transcontinental Industries, Inc., 3 UCCRS 235 (Ref. in By. N.D.Ga.1965) (lease intended as security).

Rather, the basic issue in the present case is whether in a situation where a lease is intended as security, the written instrument (the so-called lease) that was signed by the debtor (the so-called lessee) must contain language which evidences that a security interest was being created or provided for in order to satisfy the requirements of O.R.C. § 1309.-14(A) (2). The statutory provision reads as follows:

"(A) Subject to the provisions of section 1304.14 of the Revised Code on the security interest of a collecting bank and section 1309.11 of the Revised Code on a security interest arising under sections 1302.01 to 1302.98, inclusive, of the Revised Code, *a security interest is not enforceable against the debtor or third parties unless*:

\*     \*     \*     \*     \*     \*

(2) *the debtor has signed a security agreement which contains a description of the collateral* and in addition, when the security interest covers crops or oil, gas, or minerals to be extracted or timber to be cut, a description of the land concerned. \* \* \*"

O.R.C. § 1309.14(A) (2) (Emphasis added.)

A security agreement, according to O.R. C. § 1309.01(A) (8), is defined as "an agreement which creates or provides for a security interest."

In regard to these statutory provisions, the Trustee argues that the debtor Willis, did not sign security agreements as required by O.R.C. § 1309.14(A) (2) inasmuch as the instruments which it did sign did not contain any language which evidenced that a security interest was being created or provided for. Thus, they did not contain any mention of purchase or option to purchase, any reference to the passage of title to the debtor nor any mention of the granting of a security interest to the creditor which, if included, would evidence an intent to create or provide for a security interest. Rather, this intention is only found in the oral option to purchase, namely, the fact that Willis could purchase the equipment at the end of five years without any additional consideration and as such, could not be in the written instruments signed by debtor, Willis. Since the debtor did not sign security agreements, the creditor and, in turn, its assignee Associates did not acquire an enforceable security interest in the collateral. At the most, Associates acquired an unperfected security interest which, according to O.R.C. §§ 1309.-20(A) (2), (C), is subordinate to the rights of the Trustee in Bankruptcy.

There is authority for the Trustee's general proposition that in order to comply with O.R.C. § 1309.14(A) (2), a debtor must sign an agreement whose language creates or provides for a security interest. In reading O.R.C. § 1309.14(A) (2) *in para materia* with

---

1. The pertinent portion of this section reads as follows:

"\* \* \* Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) *an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.* (O.R.C. § 1301.01(KK) (Emphasis added.)

O.R.C. § 1309.01(A) (8), one can reach this conclusion. Moreover, there are numerous cases which have held that in order to have a security agreement, the agreement must contain language to the effect that a security interest was being created or granted. See *e. g.*, In re Nottingham, 6 UCCRS 1197 (Ref. in By. E.D.Tenn.1969); In re Vielleux, 5 UCCRS 277 (Ref. in By. D.Conn. 1967); In re Martronics, Inc., 2 UCCRS 364 (Ref. in By. D.Conn.1964); In re Freese, 2 UCCRS 656 (Ref. in By. E.D. Pa.1964); American Card Co. v. H. M. H. Co., 97 R.I. 59, 196 A.2d 150 (1963). On the other hand, there is authority in the Official Comments to the Code that the agreement need not contain language that creates or provides for a security interest. In particular, Comment No. 1 to O.R.C. § 1309.14, in pertinent part, reads as follows:

> "The only requirements for the enforceability of non-possessory security interests in cases not involving land are (a) a writing; (b) the debtor's signature; and (c) a description of the collateral or kinds of collateral. (Typically, of course, the agreement will contain much more.) * * *"

Conspicuously absent in this Comment is the requirement that the agreement contain language that a security interest was being created or provided for. One commentator has also noted that nothing in the Uniform Commercial Code requires that a security agreement contain a clause granting a security interest. See G. Gilmore, Security Interests in Personal Property § 11.4, at 347–48. Nonetheless, as noted previously, cases which have applied the terms of O.R.C. § 1309.14(A) (2) have rejected these approaches. However, these cases did not involve the basic issue that is present in the case at bar with respect to a lease intended as security. And, the Court feels that this makes a substantial difference.

■■ The Court believes that a lease intended as security presents a different situation in that the facts in each case determine whether a security interest was intended. O.R.C. § 1301.01(KK). Thus, in a transaction where a lease is intended as security, *factors outside of the lease* as well as the contents of the lease itself must be considered in ascertaining the intent of the parties.[2] See In re Transcontinental Industries, Inc., 3 UCCRS 235 (Ref. in By. N.D.Ga. 1965); Comment, Leases as Security: Some Problems of Identification, 8 B. C.Ind. & Com.L.Rev. 754 (1966–67). Since the intent of the parties must be ascertained from the contents of the lease itself as well as from factors outside of the lease, it seems reasonable to conclude that the contents of the lease are not determinative on whether there was a security interest being created or provided for. Accordingly, the Court feels that in a transaction where a lease is intended as security, the debtor, as in the case at bar, at the least must sign a written instrument (the so-called lease) describing the collateral in order to comply with O.R.C. § 1309.14(A) (2). Language to the effect that a security interest is being created or provided for need not be included in the so-called lease.

Although there is no direct authority for the Court's conclusion either in the Code or in case law, there is authority in an Official Comment to the Code which analogously supports the Court's position. The Comment reads as follows:

> "The definition of 'security agreement' (* * * [O.R.C.] § 1309.01 * * *) is 'an agreement which cre-

---

2. One can argue that the Court's approach in viewing evidence outside the lease is violative of the parol evidence rule. See In re Atlanta Times, Inc., 259 F.Supp. 820 (N.D.Ga.1966); In re Wheatland Electric Products Co., 237 F.Supp. 820 (W.D.Pa.1964). The Court disagrees.

Under O.R.C. § 1301.01(KK), the provision reads that the facts in each case determine whether a lease is intended as security. To the Court, this implies that facts within and without the lease must be viewed in ascertaining the intent of the parties to the transaction.

ates or provides for a security interest.' Under that definition the requirement of this section that the debtor sign a security agreement is not intended to reject, and does not reject, the deeply rooted doctrine that a bill of sale although absolute in form may be shown to have been in fact given as security. Under this Chapter as under prior law a debtor may show by parol evidence that a transfer purporting to be absolute was in fact for security and may then, on payment of the debt, assert his fundamental right to return of the collateral and execution of an acknowledgment of satisfaction." Comment No. 4, O.R.C. § 1309.14.

This Comment, thus, recognizes that a debtor need not sign an agreement which contains language that creates or provides for a security interest in a transaction where an absolute transfer of property was really intended as security. Likewise, this principle can be applied analogously to a lease intended as security. In the lease situation, as in the bill of sale transaction, there is a transfer of property which is not really what it is purported to be. In both cases, evidence outside the instrument is used or can be used to show the true intent of the parties. Albeit the bill of sale purports to transfer full ownership whereas the lease transfers less than full ownership, this should not make a difference inasmuch as in both situations, a secured transaction was intended. As O.R.C. § 1309.02 states, the form of the transaction should not matter.

 Moreover, the other creditors of the debtor are not prejudiced or misled by the absence in the so-called lease of any language to the effect that a security interest was being created or provided for. The secured party (the so-called lessor) still must file a financing statement in order to perfect its security interest.[3] This filing of the financing statement gives notice to the world that

secured party has a security interest in the collateral. In view of this notice, the other creditors of the debtor cannot justifiably claim prejudice.

Therefore, for the foregoing reasons, the Court denies the petition of the Trustee to review the decision of the Referee in Bankruptcy.

It is so ordered.

---

3. In the case at bar, Motorola did file a financing statement in order to perfect its security interest in the equipment. Its assignee, Associates, did not have to file a new financing statement in order to continue the perfected status of the security interest. O.R.C. § 1309.21(B).