124 N.J. Super. 154 (1973)
305 A.2d 442
FIRST COUNTY NATIONAL BANK AND TRUST COMPANY, NOW BY MERGER NATIONAL BANK AND TRUST COMPANY OF GLOUCESTER COUNTY, PLAINTIFF-APPELLANT,
v.
ANTHONY L. CANNA, ANNE B. CANNA AND MICHAEL DIODATO, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 30, 1973.
Decided May 30, 1973.
*155 Before Judges LORA, ALLCORN and HANDLER.
Messrs. Granite and Chell, attorneys for appellant.
Mr. Samuel G. DeSimone, attorney for respondents (Mr. P. Jeffrey Wintner, on the brief).
PER CURIAM.
In 1969 plaintiff brought suit against defendant Michael Diodato, and on November 18, 1970 judgment was entered in favor of plaintiff and against Diodato for $2,402.65.
Between the time of commencement of said action and the entry of judgment therein defendant Anthony L. Canna claims to have loaned to Diodato (his brother-in-law) the sum of $2,200 to enable the latter to purchase a used Cadillac automobile. The loan was all in cash  defendant Anna B. Canna, the wife of Anthony and the sister of Diodato, testified that she "gave the money to my husband, he gave it to my brother."
According to the testimony of Anthony Canna, the entire transaction was consummated on February 28, 1970; the parties had no legal advice and simply "worked [the] ... papers up" themselves. Diodato executed a handwritten promissory note, dated February 28, 1970, in the following form:
*156 I, Michael Diodato, promise to pay $2,200.00 which was loaned to me for the purchase of a 1968 Cadillac, Serial # A-B8135760 Z, to be paid to Anthony L. Canna within 3 years time of above date.
There was no provision for the payment of interest. The note bore the signature of Diodato, as well as that of a notary public. There was no jurat or other attestation by the notary, although it did bear his seal and the notation "2/28/70" alongside his signature. The notary was present and signed the note because Canna "felt this was the best way to do it."
Canna testified further that, following the execution of the note, both he and Diodato proceeded to the "division of motor vehicles" where a new title certificate to the Cadillac was issued in the name of Diodato as owner, and designating Anthony L. Canna as "secured party". No instruments or papers other than the note and the title certificate appear to have been drawn or signed by any of the parties with regard to the transaction of February 28, 1970.
An additional loan of "around $900" was claimed by Canna to have been made by him to Diodato in April, 1970. Another handwritten promissory note signed by Diodato, dated April 15, 1970, and bearing the signature of the same notary public, stated:
I, Michael Diodato promise to pay an additional $900.00, for personal expense, which will be added to the $2,200.00 original loan on a 1968 Cadillac, Serial # A-B8135760 Z, making the total amount of $3,100.00 to be paid within 3 years time of the original note to Anthony L. Canna.
Again the note made no provision for interest.
Following the entry of its judgment on November 18, 1970 plaintiff levied execution upon Diodato's Cadillac. As a result plaintiff became aware of the fact that Canna was designated as "secured party" on the certificate of ownership of the vehicle, and was asserting a lien against it as security for the two loans, prior to the lien of plaintiff's execution on its judgment.
*157 Thereupon plaintiff initiated the present action to set aside as invalid the lien claimed by Canna upon the automobile. After hearing, the trial judge rejected contentions by the plaintiff "that no consideration passed between the parties ... [and] that no value was given"; in essence found that the transaction between Diodato and Canna created a valid security interest in the automobile in Canna, which was perfected by the designation of Canna as "secured party" on the certificate of ownership, and held that Canna's lien was prior to that of plaintiff. The present appeal has been taken from said determination.
The single ground urged for reversal is that the transaction between Canna and Diodato did not create in Canna a security interest in the Cadillac, prior to and enforceable against the plaintiff's lien.
Under the terms of the Uniform Commercial Code a security interest is defined as "an interest in personal property ... which secures payment or performance of an obligation." N.J.S.A. 12A:1-201(37). Such a security interest in collateral cannot be created or established absent an agreement between the parties "that it attach." N.J.S.A. 12A:9-204(1). Otherwise stated, there must be "an agreement which creates or provides for a security interest." N.J.S.A. 12A:9-105(l)(h). And where the collateral given as security is a chattel not in the actual possession of the creditor, the security agreement must be in writing, signed by the debtor, in order to render the security interest "enforceable against the debtor or third parties." N.J.S.A. 12A:9-203(1).
In view of the fact that the proofs here indicate that no security agreement, as such, was signed by Diodato, and that the only agreements signed by him were the promissory notes, we are faced with the question as to whether either or both of the notes may be construed as constituting the security agreement required by the Code. We conclude that they may not be so construed.
*158 By its very nature an agreement creating a security interest in collateral, of necessity, must contain language that grants or creates a security interest in the collateral. In short, the language must be such as to clearly indicate that the debtor intended to thereby specifically grant to the creditor a security interest in the collateral. Absent such language the writing does not constitute a security agreement and does not create a security interest. Mitchell v. Shepherd Mall State Bank, 458 F.2d 700, 703 (10 Cir.1972), and cases therein cited at note 1.
Neither of the promissory notes here in evidence contains any language or wording which expressly or by implication grants, conveys or transfers to Canna, or otherwise creates or establishes in him, a lien or interest in the Cadillac as security for the repayment of the loans. The mere reference in each of the notes to the Cadillac by make, year and serial number does not operate to supply the missing essentials and, somehow, metamorphose the notes into a security agreement. Indeed, it has been specifically held that a promissory note which does not contain language granting a security interest in collateral, "even ... [where the note recites] data relating to collateral security, is not thereby converted into such an agreement." Safe Deposit and Trust Co. v. Berman, 393 F.2d 401, 403 (1 Cir.1968). See also, American Card Co. v. H.M.H. Co., 97 R.I. 59, 196 A.2d 150 (Sup. Ct. 1963). Cf. In re Walter W. Willis, Inc., 313 F. Supp. 1274 (N.D. Ohio 1970), aff'd 440 F.2d 995 (6 Cir.1971); Evans v. Everett, 279 N.C. 352, 183 S.E. 2d 109 (Sup. Ct. 1971). See generally, Annotation, "Construction and effect of UCC Art. 9, dealing with secured transactions, sales of accounts, contract rights, and chattel paper," 30 A.L.R.3d 9, §§ 11 and 12 (1970).
Thus, the notes, individually or jointly, may not be construed as and do not constitute a security agreement within the meaning and contemplation of the term as used in the Code.
*159 Nor is the deficiency supplied by the notation contained on the certificate of ownership of the Cadillac, which designates Canna as "secured party." In New Jersey, under the provisions of the Code and the Motor Vehicle Act, such notation is the method utilized to perfect a security interest which has been created in a motor vehicle by virtue of an appropriate and valid security agreement, in lieu of the financing statement customarily required to be filed to perfect a security interest in other type collateral. N.J.S.A. 12A:9-302(1)(d), (3)(b), (4); N.J.S.A. 39:10-11(J). Quite apart from the fact that it does not appear that the notation on the certificate of ownership was signed by "the debtor", the notation is no more than that  namely, a notation. It does not itself grant or purport to grant a security interest in the automobile.
Consequently, the notation does not satisfy the requisites of the security agreement. As stated by Judge Murrah in Mitchell v. Shepherd Mall State Bank, 458 F.2d 700, 703-704 (10 Cir.1972):
The fact that the parties signed and filed a financing statement which covered ... [the collateral], is of no consequence to our decision. The function of a financing statement is to put third parties on notice that the secured party who has filed it may have a perfected security interest in the collateral described. * * * Absent language which would constitute the debtor's grant of a security interest, a financing statement cannot serve as a security agreement. * * *
See also, M. Rutkin Elect. Sup. Co., Inc. v. Burdette Elect., Inc., 98 N.J. Super. 378 (Ch. Div. 1967), and American Card Co. v. H.M.H. Co., supra.
In light of the foregoing, defendant Anthony L. Canna has no security interest in the Cadillac by virtue of the transactions of February 28, 1970 and April 15, 1970, between the Cannas and Diodato; and, therefore, plaintiff is entitled to satisfy the lien of its judgment against Diodato by the sale of the Cadillac under its levy of execution.
Accordingly, the judgment of the Law Division is reversed.