In the Matter of Joseph **WAMBACH, Sr., et al., Bankrupts,**

and

**Palatine National Bank, Intervening Petitioner-Appellee,**

v.

**William L. RANDALL, Trustee in Bankruptcy, Respondent-Appellant.**

No. 72–1725.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1973.

Decided July 18, 1973.

Rehearing Denied Aug. 6, 1973.

Kevin J. Gillogly, Chicago, Ill., for respondent-appellant.

Richard J. Riordan, Robert Keith Larson, Riordan, Linklater, Larson & Bruckert, Chicago, Ill., for appellee.

Before FAIRCHILD, STEVENS and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal considers whether under the Illinois enactment of the Uniform Commercial Code a document evidencing a conveyance of property rights absolute on its face may be construed as a security agreement by reference to other documents relating to the underlying loan.

**I**

In early January, 1970, Hans Wambach and Joseph Wambach, Jr., sons of Joseph Wambach, Sr., and Hermine Wambach, met with C. Michael Reese and Scott Skoglund, officers of Palatine National Bank, on the premises of Wambach Corporation to discuss possible loans by the bank to the corporation with a 17-unit apartment building located on Campbell Street in Chicago to be used as collateral security for the loans.

On January 26, 1970, the four Wambachs—Joseph, Sr., Hermine, Joseph, Jr., and Hans—executed and delivered to the bank a guarantee by which each personally guaranteed to the bank the full and prompt payment of "all existing loans and all loans hereafter made" by the bank to Wambach Corporation.

On January 29, 1970, the corporation borrowed $23,700 from the bank and executed and delivered its promissory note to the bank for $33,180, secured by "all machinery and equipment per attached list."

On February 20, 1970, Joseph, Sr., Hermine and Joseph Wambach, Jr., who later became the bankrupts herein, executed and delivered to the bank a trust agreement creating an Illinois land trust for the 17-unit apartment building with the three of them as the holders of the entire beneficial interest in the trust. On the following day, the real estate upon which the apartment building was located was deeded in trust by the three Wambachs to the Palatine National Bank as trustee under Trust No. 270.

On February 23, 1970, the three Wambachs executed and delivered an assignment of their beneficial interest in the trust to C. Michael Reese, a bank officer, who accepted the assignment as trustee for the bank to act for the bank in case the loan was in default and the collateral was required to be liquidated.

On May 12, 1970, Wambach Corporation borrowed $12,000 from the bank and executed and delivered its promissory note for $16,798.80, secured by accounts receivable, machinery and equipment and "assignment of beneficial interest in P.N.B. Trust # 270."

Prior to July 20, 1970, a financing statement was executed by the three Wambachs as debtors and by the Palatine National Bank as the secured party,

covering "assignment of beneficial interest in Trust No. 270 at Palatine National Bank in Palatine, Illinois." On July 20, the financing statement was filed with the Secretary of State of Illinois as file No. A–435490.

On July 28, 1970, Wambach Corporation borrowed $42,000 from the bank and executed and delivered its promissory note for $58,800, and on September 30, 1970, it borrowed $5,582.34 and executed and delivered its promissory note for that amount. The last two notes were secured by accounts receivable, machinery and equipment and assignment of beneficial interest in P.N.B. Trust No. 270.

The bank paid out the proceeds of the four loans to the Corporation. On January 9, 1971, the amounts remaining due and payable on the four notes totalled $66,661.50; the balance of other indebtedness of the Corporation to the bank after applicable credits was $15,240.97; and the total net debt secured by the assignment of beneficial interest was $81,902.47.

The three Wambachs filed voluntary petitions in bankruptcy on February 25, 1971, which were consolidated on June 3, 1971.

The Palatine National Bank filed an intervening petition, claiming that the amount due and owing to it under the guarantees of the Wambachs exceeded the fair market value of the beneficial interest of the Wambachs in Trust No. 270.

The referee in bankruptcy entered an order on February 3, 1972, holding that the bank's claim was not a perfected lien because there was no valid "security agreement" between the Wambachs and the bank and that the claim was therefore only a general claim against the bankrupts' estates.

On May 5, 1972, the District Court vacated the referee's order, holding that "the notes, the guarantee, the absolute assignment and the financing statement, when construed together, are conclusive evidence that the beneficial interest in the land trust was to serve as collateral for the various loans, and that these documents collectively satisfied the requirements of Section 9–203 [of the Illinois enactment of the Uniform Commercial Code, Ill.Rev.Stat., ch. 26], thereby constituting a valid security interest." In re Wambach, 343 F.Supp. 73, 76 (N.D. Ill., 1972). The trustee in bankruptcy has appealed from the District Court's order. We affirm.

II

The Illinois enactment of the Uniform Commercial Code provides in Section 9–204 that a "security interest cannot attach until there is agreement . . . that it attach . . ." Ill.Rev. Stat., ch. 26, § 9–204(1)). Section 1–201(3) defines "agreement" as "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance . . . "

Section 9–203(1)(b) provides that "a security interest is not enforceable . . . unless . . . the debtor has signed a security agreement which contains a description of the collateral . . . " Uniform Commercial Code Comment 1 states that the "only requirements for the enforceability of non-possessory security interests in cases not involving land are (a) a writing; (b) the debtor's signature; and (c) a description of the collateral or kinds of collateral." The Illinois Code Comment states that Section 9–203 "reduces to an absolute minimum the formal requirements for the creation of a security interest."

Section 9–302(1) provides that a "financing statement must be filed to perfect all security interests . . . "

■ Here the parties orally agreed that a security interest attach to the

trust holding the apartment building and a financing statement covering the "assignment of beneficial interest in Trust No. 270 at Palatine National Bank" was properly filed with the Secretary of State. The only remaining question is whether the assignment of beneficial interest, absolute on its face, either standing alone or together with the collateral notes and other documents relating to the transaction, constitutes a written security agreement with the debtors' signatures and a description of the collateral.

■ The interest of the beneficiaries in an Illinois land trust is personal property.[1] Assignments of the beneficial interest in such land trusts are commonly used as security for loans.[2] When used as security, since the interest involved is personal property which under the Code is classified as "general intangibles" (Section 9–106), the security interest may be perfected only by filing (Section 9–302). Levine v. Pascal, 94 Ill.App.2d 43, 57, 236 N.E.2d 425, 432 (1968).

The Code, however, defines the underlying "security agreement" as "an agreement which creates or provides for a security interest" (Section 9–105(1)(h)'). An assignment of beneficial interest which is absolute on its face does not specifically fall within the language of the definition since such an assignment does not expressly create or provide for a security interest. On the other hand, Uniform Commercial Code Comment 4 (Section 9–203) reads in part:

"Under that definition the requirement of this Section that the debtor sign a security agreement is not intended to reject, and does not reject, the deeply rooted doctrine that a bill of sale although absolute in form may be shown to have been in fact given as security. Under this Article as under prior law a debtor may show by parol evidence that a transfer purporting to be absolute was in fact for security and may then, on payment of the debt, assert his fundamental right to return of the collateral and execution of an acknowledgment of satisfaction." [3]

This Comment contemplates that the security agreement may consist at least in part of a writing absolute in nature which does not in itself create or provide for a security interest.

The District Court, relying upon the Code's definition of agreement "as found" in language or by implication from other circumstances, looked to all of the documents constituting the trans-

---

[1]. Levine v. Pascal, 94 Ill.App.2d 43, 50, 236 N.E.2d 425, 428 (1968): "The Illinois land trust, by its very nature, is characteristically different from common law land trusts. While the common law accomplishes a split between the legal title in the trustee and the equitable title in the beneficiary, in an Illinois land trust, the trustee has both legal and equitable title . . . By placing with the trustee the 'full, complete and exclusive title to the real estate, both legal and equitable,' the beneficiary in an Illinois land trust is left with a personal property interest only . . . Numerous . . . cases stand for the proposition that the interest of the beneficiary of an Illinois land trust is personal property."

[2]. "There is a prevalent and apparently growing practice of using assignments of beneficial interests in Illinois land trusts as security for loans. The purpose of using this technique, from the borrower's point of view, is to save the time and expense of a real estate transaction, and, from the lender's point of view, to avoid the necessity of foreclosure in the event of default . . . Both absolute and collateral assignments are used for collateral purposes." Varsek, Assignments of Beneficial Interests in Land Trusts As Collateral, 60 Ill.B.J. 268, 269 (1971).

[3]. Illinois has always held that a deed absolute on its face may be shown to be a mortgage. Burroughs v. Burroughs, 296 N.E.2d 350 (Ill.App.1973). Since the assignment of beneficial interest pertains to personal property it is akin to the "bill of sale" referred to in the Comment.

action involved and said at 343 F.Supp. at 75:

"When the first loan was made by the bank to the Wambach Corporation, the now bankrupt debtors personally guaranteed not only the loan then made but all future loans to be made to the Wambach Corporation. At the same time, they executed their assignment of beneficial interest to be held by the bank as collateral security for the first loan, although the first note did not specifically mention this collateral. When the next three loans were made subject to the continuing personal guarantee, each one provided:

'To secure payment of this note and all other liabilities of the undersigned to the Bank or other holder hereof, howsoever created, whether now existing or hereafter arising, whether direct or indirect, whether absolute or contingent, and whether due or to become due (this note and all other liabilities being hereinafter called the 'obligations'), the undersigned pledges to the Bank and grants to the Bank a security interest in all property and interests therein of the undersigned of any kind, now or at any time hereafter assigned, transferred or delivered to or left in the possession of the Bank by or for the account of the undersigned, including but without limitation all property described in security agreements executed by the undersigned, receipts for collateral from time to time issued by the Bank to or for the account of the undersigned and the following described property (said property and any substitutions therefor and any additions thereto being hereinafter called the 'Collateral'); to-wit:'

Following this clause, each note expressly referred to the assignment of beneficial interest as part of the collateral.

Although Hermine Wambach did not sign these notes, she joined the other debtors in signing the financial statement of July 20, 1970, clearly recognizing the fact that the assignment of beneficial interest was held by the bank as security for the loans she had guaranteed."

In Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland, 455 F.2d 141, 146 (4th Cir. 1970), what apparently was an absolute assignment to a bank of the proceeds of a contract between the debtor and the United States Air Force "having been signed by the debtor and containing a description of the collateral, constituted the required security agreement."

In re Walter W. Willis, Inc., 313 F. Supp. 1274 (N.D. Ohio, 1970), aff'd, 440 F.2d 995 (6th Cir. 1971), written leases of equipment accompanied by oral option agreements to purchase the equipment were held to constitute security agreements, the court stating at 313 F.Supp. at 1278–1279:

"Language to the effect that a security interest is being created or provided for need not be included in the so-called lease . . .

[The] filing of the financing statement gives notice to the world that secured party has a security interest in the collateral."

See also, Avco Delta Corp. Canada Limited v. United States, 459 F.2d 436, 441, n.4 (7th Cir. 1972).

The judgment of May 5, 1972, is affirmed.