AMERICAN INVS–CO COUNTRYSIDE, INC., an Illinois Corporation, et al., Plaintiffs-Appellants,

v.

RIVERDALE BANK, an Illinois Banking Corporation, et al., Defendants-Appellees.

No. 78–1664.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1979.

Decided March 29, 1979.

Rehearing and Rehearing In Banc Denied June 5, 1979.

---

Stephen Novack, Chicago, Ill., for plaintiffs-appellants.

Charles M. Shea, Chicago, Ill., for defendants-appellees.

Before PELL, Circuit Judge, MARKEY, Chief Judge,* and WOOD, Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

The plaintiff-appellant, American Invs-Co Countryside, Inc. (American), appeals from the district court's dismissal of its second amended complaint for lack of subject matter jurisdiction. The appellant maintains that jurisdiction is conferred over the action by 28 U.S.C. §§ 1331 and 1337.[1] We affirm.

---

* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

1. Before the district court, the plaintiff argued that 28 U.S.C. § 2410 provided yet another basis for the court's jurisdiction. The trial court held that the statute did not constitute an independent source of federal jurisdiction. The appellant has not raised this issue on appeal and we do not consider it.

2. An Illinois land trust is a peculiar creature of Illinois law in which the trustee holds both the legal and equitable title to the real estate. The interest of the beneficiary is personal property. Nevertheless, the beneficiary can retain substantial powers over the management of the

## I.

The facts alleged in American's complaint, which we accept as true for purposes of determining whether subject matter jurisdiction exists, are as follows: K.K. & Co., a limited partnership under the laws of Illinois (KK), was the sole legal owner of a certain parcel of Illinois land on which it intended to construct multifamily housing. The housing was to be financed with a mortgage insured by the United States Department of Housing and Urban Development, Federal Housing Administration (FHA). In September 1970, apparently as part of the structuring of the financing, KK changed the form in which it held the property. It conveyed the realty to LaSalle National Bank and created an Illinois land trust with itself as the sole beneficiary.[2] The trust agreement between KK and the Bank recited the rights and duties of the parties and contained additional provisions apparently required by the FHA as a condition to granting mortgage insurance.

The terms of the trust agreement made clear that it was to be construed in conformity with a yet to be executed regulatory agreement between KK, the Bank, and the FHA.[3] The provisions of the trust and regulatory agreements restricted assignments of the beneficial interest in the property. The trust agreement provides, in pertinent part:

> [N]o assignment shall be accepted by the Trustee or be valid until ten (10) days after the Commissioner has been advised

property. For a discussion of the uses of and legal problems raised by this form of holding real property, see Garrett, *Land Trusts*, 1955 U.Ill.L.F. 655, and G. Bogert & G. Bogert, *Trusts and Trustees* § 249 (2d rev. ed. 1977).

3. The trust agreement provides:

Upon the execution of said Regulatory Agreement, the provisions of said Regulatory Agreement shall be binding on the Trustee and the beneficiaries, and, in the event that any provisions of this Trust Agreement shall or may conflict with the provisions of said Regulatory Agreement, the Regulatory Agreement shall be controlling.

by the beneficiary of any proposed assignment of beneficial interest and until the assignee of such beneficial interest shall have joined in any Regulatory Agreement which the Trustee may have entered into with the Commissioner. . . .

The corresponding provision of the FHA regulatory agreement provides:

Owners shall not without prior approval of the Secretary:

(a) Convey, transfer or encumber any of the mortgaged property. . . .

&ast; &ast; &ast; &ast; &ast; &ast;

(c) Convey, assign, or transfer any beneficial interest in any trust holding title to the property, or the interest of any general partner in a partnership owning the property . . . or the right to receive the rents and profits from the mortgaged property.

Early the following year, KK, the Bank, and the FHA, as anticipated, executed the regulatory agreement.

In August 1971, KK entered into a limited partnership agreement with several individual investors. KK agreed to become the sole general partner in the new venture, Countryside Apartment Associates (Countryside), and assigned its entire beneficial interest in the Illinois land trust to Countryside as a capital contribution. Countryside agreed to be bound by the FHA regulatory agreement and the requisite FHA approval of the assignment was later obtained.

According to the appellant's allegations, less than a year after KK assigned its beneficial interest in the land trust to Countryside, KK conveyed one-half of that same interest to the appellee Riverdale Bank, as collateral for a loan transaction for its own benefit. This collateral assignment was not submitted to the FHA for approval and Riverdale did not join in the regulatory agreement. KK later defaulted on the loan, and Riverdale, pursuant to Article 9 of the Uniform Commercial Code, held a public sale at which it sold to itself the one-half interest in the land trust.[4] This transaction also was without the consent of the FHA.

After the collateral assignment to Riverdale, but before Riverdale's foreclosure on the beneficial interest, the appellant, American, became a general partner in Countryside. Joining with the other general partners, it instituted this action naming Riverdale and the Secretary of the Department of Housing and Urban Development, among others, as defendants. American seeks a declaratory judgment that Riverdale's claim to one-half of the beneficial interest is void.

## II.

The gist of American's claim in Count I is that Countryside is the owner of the disputed one-half interest in the land trust because the restrictions contained in the trust agreement and the FHA regulatory agreement render Riverdale's claimed interest void.[5] Plaintiff argues that the resolution of its claim requires a determination of the meaning and effect of the FHA regulatory agreement and that the federal court must apply federal common law in making that determination. All parties agree that federal common law is sufficient to evoke the jurisdiction of the federal court under 28 U.S.C. § 1331. See Illinois v. Milwaukee, 406 U.S. 91, 98–100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972).

---

4. Because the beneficial interest in an Illinois land trust is personal property, most of the details of its disposition upon default are governed by Article 9 of the Uniform Commercial Code, not state real estate foreclosure statutes. *Wambach v. Randall*, 484 F.2d 572 (7th Cir. 1973); *Bank of Broadway v. Goldblatt*, 103 Ill.App.2d 243, 243 N.E.2d 501 (1968); *Levine v. Pascal*, 94 Ill.App.2d 43, 236 N.E.2d 425 (1968), *noted in* 18 De Paul L.Rev. 875 (1969) and 63 Nw.U.L.Rev. 632 (1968). *See generally*

Kenoe, *Land Trust Financing and the Uniform Commercial Code*, 52 Chi.B.Rec. 419 (1971); Varsek, *Assignments of Beneficial Interests in Land Trusts as Collateral*, 60 Ill.B.J. 268 (1971).

5. In addition, plaintiff has alleged in Count II that Riverdale's interest is void for reasons of state law, a pendent claim the jurisdiction over which depends upon whether Count I evokes the jurisdiction of the federal court.

Whatever else Count I may be, it is not a statement of a cause of action created by federal law. *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916). The beneficial interest in the land trust is a creation of Illinois law, and Countryside's ownership, if any, of that interest and the right to protect it against the claims of other private persons are controlled by state law. *See Butner v. United States*, —— U.S. ——, ——, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law"); *cf. Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) (Indian tribe's right to possession of lands may be a right protected by federal law). No federal statute guarantees Countryside's ownership rights against the actions of other private persons and no distinctive federal policy warrants the creation by the federal courts of remedies to vindicate those rights.

█ The fact that federal law does not create the cause of action, however, does not necessarily mean that the case does not "arise under" federal law under 28 U.S.C. § 1331. "[A] single old Supreme Court decision," 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3562 at 412 (1975), holds that jurisdiction under section 1331 attaches if the complaint, although stating a state-created cause of action, necessarily raises a question of federal law. *See Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921).[6] Thus, "it has been found sufficient that some aspect of federal law is essential to plaintiff's success. The litigation-provoking problem has been the degree to which federal law must be in the forefront of the case, and not be remote, collateral or peripheral." *Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.*, 348 U.S. 437, 450, 75 S.Ct. 489, 495, 99 L.Ed. 510 (1955) (plurality opinion of Frankfurter, J.).

The district court, relying on a passage from *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936),[7] held

---

**6.** Justice Brennan explained the factual background, holding, and possible significance of the *Smith* case in his dissenting opinion in *Wheeldin v. Wheeler*, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963):

A shareholder sued to enjoin the Trust Company, a Missouri corporation, from investing in certain federal bonds, on the ground that the Act of Congress authorizing their issuance was unconstitutional. It was claimed that under Missouri law an investment in securities the issuance of which had not been authorized by a valid law was *ultra vires* and enjoinable. The cause of action, thus, was state-created. Nevertheless this Court held that the action was one arising under federal law within the meaning of the predecessor section to 28 U.S.C. § 1331(a). See also *Fielding v. Allen*, 2 Cir., 181 F.2d 163. It has been suggested that later decisions, e. g., *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903; *Gully v. First Nat. Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70, repudiated *Smith*. London, "Federal Question" Jurisdiction—A Snare and a Delusion, 57 Mich.L.Rev. 835, 853 (1959). But those decisions are clearly distinguishable as attempts to found federal jurisdiction upon "remote federal premises, or mere federal permission . . . , or other merely possible federal defenses." Hart and Wechsler, The Federal Courts and the Federal System (1953), 769. *Smith* remains firm authority

for the principle that "where federal law has inserted itself into the texture of state law, a claim founded on the national legislation could be brought into a federal forum" even if the right of action was state-created. Mishkin, The Federal "Question" in the District Courts, 53 Col.L.Rev. 157, 166 (1953). Stated differently, "in the Smith case the claim under federal law was an essential ingredient of the plaintiff's case, without which he could assert no right to relief." Hart and Wechsler, *supra*, at 766. In short, there is federal-question jurisdiction if a proposition of federal law is inherent in the plaintiff's claim. Cf. Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law and Contemp.Prob. 216, 225 (1948).

*Id.* at 659–60, 83 S.Ct. at 1449. *See generally* Hart & Wechsler's The Federal Courts and the Federal System 873–90 (2d ed. 1973).

**7.** This Court has had occasion to point out how futile is the attempt to define a "cause of action" without reference to the context. . . . To define broadly and in the abstract "a case arising under the Constitution or laws of the United States" has hazards of a kindred order. What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation. One could carry the search for causes backward, almost with-

that the plaintiff failed to demonstrate that a construction of the FHA regulatory agreement was "basic and necessary to the decision of the case." The district court assumed that plaintiff could prevail on state law theories alone without the need for construing the FHA regulatory agreement, and therefore reasoned that the case did not directly raise the need to construe the agreement.

■ The problem with the district court's approach is, as we see it, that it depends not upon an analysis of the four corners of the complaint but upon a forecast of the matters that would be dispositive at trial—a technique seemingly at odds with the well-pleaded complaint rule.[8] The fact that a complaint also states a claim for relief under state law or could be decided exclusively on state law grounds does not necessarily negate the existence of a federal question.

> Before deciding that there is no jurisdiction, the district court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States. For to that extent "the party who brings a suit is master to decide what law he will rely upon, and . . does determine whether he will bring a

'suit arising under' the . . . [Constitution or laws] of the United States by his declaration or bill."

*Bell v. Hood,* 327 U.S. 678, 681, 66 S.Ct. 773, 775, 90 L.Ed. 939 (1946). It is too late in the day to deny that inventive pleading plays some part in conferring jurisdiction upon the federal courts.

■ The limit on the role of pleading in gaining access to a federal forum is found in the well-pleaded complaint rule: a federal question must appear in plaintiff's well-pleaded complaint in order to make the case arise under federal law. *See Louisville & Nashville R. R. v. Mottley,* 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1911). Were this an ordinary declaratory action we would have serious reservations about whether plaintiff's complaint could properly raise the matter of the restriction on transfers imposed by the FHA regulatory agreement for purposes of establishing jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); 10 C. Wright & A. Miller, Federal Practice and Procedure § 2767 (1973). Plaintiff, however, characterizes its complaint as a bill to remove a cloud on title,[9] and it is well settled that such a bill must allege "the facts showing the plaintiff's ti-

---

out end. . . . Instead, there has been a selective process which picks the substantial causes out of the web and lays the other ones aside. As in problems of causation, so here in the search for the underlying law. If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by.

299 U.S. at 117–18, 57 S.Ct. at 100.

8. But the passage [in *Gully, see* note 7, *supra*] is . . . troubling in its insistence on distinguishing between "basic" and "collateral" controversies and between "necessary" and "merely possible" disputes. That is reminiscent of a sentence earlier in the opinion in which Justice Cardozo said: "A genuine and present controversy, not merely

a possible or conjectural one, must exist with reference thereto . . . and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." There is a paradox in insisting on a genuine and present controversy when the court is allowed to look only at the complaint. In the words of two distinguished commentators: "How this magic can be performed still remains a mystery of the judicial process."

13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3562 at 411 (1975).

9. Although a suit to remove a cloud on title is typically used to settle title to real estate and the subject matter of this action is personalty, this does not prevent the plaintiff from maintaining the action as such. This court has permitted an action to remove a cloud on title to personal property when, as here, the dispute involved rights closely related to rights in land. *Chicago Auditorium Ass'n v. Willing,* 20 F.2d 837 (7th Cir. 1927), *rev'd on other grounds,* 277 U.S. 274, 48 S.Ct. 507, 72 L.Ed. 880 (1928); *see* Annot., 105 A.L.R. 291 (1936).

tle and the existence and invalidity of the instrument or record sought to be eliminated as a cloud . . . ." *Hopkins v. Walker*, 244 U.S. 486, 490, 37 S.Ct. 711, 713, 61 L.Ed. 1270 (1917). *See also New York v. White*, 528 F.2d 336 (2d Cir. 1975).[10] Here, although Countryside's own title is rooted in state law, it is contended that Riverdale's claim to title is invalid by reason of the FHA regulatory agreement. Furthermore, it is argued that resort to federal common law is necessary to determine the meaning and effect of that agreement. Consequently, we believe that if the last contention is correct, the question with respect to federal law is reasonably raised by the plaintiff's well-pleaded complaint. Plaintiff could ultimately prevail on state law grounds alone, but its complaint is plainly framed so long as to require a determination of the meaning and effect of the FHA regulatory agreement.

Although the path from the provisions of the regulatory agreement to the relief plaintiff seeks is long, it is relatively direct. Consequently, we proceed to consider whether the regulatory agreement's terms are governed by federal common law, thereby establishing the jurisdictional basis for this suit.

### III.

Plaintiff's argument for the application of federal common law rests on the fact that a federal agency, the FHA, is a party to the regulatory agreement. Plaintiff relies upon the chain of federal authority beginning with the National Housing Act, *see* 12 U.S.C. § 1701c(a) (authorizing the Secretary to promulgate regulations), proceeding through federal regulations governing mortgage insurance, *see* 24 C.F.R. §§ 207.9, 207.18, 221.529, and culminating in the FHA regulatory agreement as the basis for the creation of federal common law. *See United States v. Seckinger*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). We think, however, that "the fact that the contract was entered into pursuant to authority conferred by federal statute and, ultimately, by the Constitution," *id.* at 209–10, 90 S.Ct. at 884, is only the beginning, not the end, of the analysis, where, as here, the contract is relied upon in a dispute between private parties. *See, e. g., Miree v. DeKalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (whether private persons are third party beneficiaries of a contract between a county and the Federal Aviation Administration is governed by state, not federal, law); *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966) (dispute between private parties about the validity of assignments of leases of federally owned land determined by state law); *Bank of America National Trust & Savings Association v. Parnell*, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956) (rights of private transferees *inter sese* with respect to federal government bonds governed by state law).[11]

10. The final aspect of the well-pleaded complaint rule is that plaintiff cannot win admission to federal court by allegations to support his own case that are not required by nice pleading rules. This is well illustrated by cases involving disputes about land. If title to land is in doubt because of some matter of federal law, there is federal jurisdiction to entertain a bill to remove a cloud on title but not a suit to quiet title, since allegations as to the nature of the cloud are proper in the first kind of action but improper in the second. An action to enjoin another from using land that, by federal law, is asserted to be plaintiff's raises a proper federal question, but if plaintiff is out of possession, he has an adequate legal remedy in an action for ejectment, in which allegations as to the title of land are not proper, and he cannot invoke federal question jurisdiction.

These subtle distinctions, dependent on long-forgotten lore as to the forms of action, are difficult to apply and it is equally difficult to suppose that they correspond to any rational judgment on when federal jurisdiction should or should not exist.

13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3566 at 436–37 (1975).

11. The plaintiff maintains that the question presented here has already been resolved in favor of the application of federal law by *United States v. County of Allegheny*, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944). In *Allegheny*, the Supreme Court said:

The validity and construction of contracts through which the United States is exercising

■ This dispute does not challenge the interest of the FHA in the underlying property; the priority and validity of the FHA's interest in the real estate are unquestioned. The dispute is simply between two claimants to the beneficial interest in the trust which holds title to the realty. The plaintiff maintains that the FHA will be bound by the construction which is given to the regulatory agreement and will be required to deal with whoever the court holds is the rightful owner,[12] but it is not clear that a declaration of the effect of the agreement on the rights of the private parties *inter sese* would necessarily bind the FHA. *See Smith v. Grimm*, 534 F.2d 1346, 1351 (9th Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976).

Moreover, even if the FHA will be bound by the outcome of this litigation and will be required to deal with whoever is determined to be the owner of the beneficial interest, the plaintiff has been unable to identify any distinctive federal policy which requires the application of federal common law. Plaintiff has not shown that dealing with one claimant will be more onerous for the FHA than dealing with the other. Similarly, the plaintiff has not shown us, and we are not aware of, any body of Illinois law which would ignore whatever interest the FHA has in restricting transfers of the ownership of the property. A mortgagee typically has some interest in controlling who owns the mortgaged property. An impecunious or otherwise undesirable purchaser, for example, may increase the risk of default or decrease the value of the collateral through waste. But the interest of the FHA as a mortgage insurer and now, apparently, as a mortgagee in this regard is one shared with all private mortgagees who typically must look to state law to protect their interests. "In deciding whether rules of federal common law should be fashioned, normally the guiding principle is that a significant conflict between some federal policy or interest and the use of state law in the premises must first be specifically shown." *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966). General assertions of the need for a uniform body of governing law are insufficient, particularly when there is no indication that application of the laws of the various states would result in varying or inconsistent rights and duties for the federal government.

Against the rather speculative and remote federal interest evident here, we must consider the state's interest in the application of its law. The suit is primarily one between private litigants. It concerns the rights to property, rights typically governed by state law. *See* Note, *The Federal Common Law*, 82 Harv.L.Rev. 1512, 1518–19 (1969).[13] Thus, it touches on an area where

---

its constitutional functions, their consequences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any State.

*Id.* at 183, 64 S.Ct. at 913. The Court's remarks were made in the context of determining whether the United States held title to particular property. In this case, the property interests of the FHA are not directly contested. Moreover, in *Allegheny* the ultimate issue presented to the Court was whether the government's property was subject to state taxation. Thus, the government's interest in the controversy was much more direct than its interest in the outcome of this case. In any event, the broad language in *Allegheny* must be regarded as narrowed by the Court's subsequent holdings in *Miree*, *Wallis*, and *Parnell*.

12. The Secretary of the Department of Housing and Urban Development, who was named as a defendant in the proceedings before the trial court, filed a two page "suggestion" with the district court merely adopting the plaintiff's position on the jurisdictional issue and expressing the desire that the matters raised in the lawsuit be heard in the federal court. The Secretary, however, has not joined in this appeal.

13. *Cf. Butner v. United States*, —— U.S. ——, ——, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979):

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both State and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manu-*

the federal courts are properly reluctant to trespass without clear congressional authorization. *See Miree v. DeKalb County,* 433 U.S. 25, 32, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Wallis v. Pan American Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966).

We do not believe that Congress, in spite of the substantial federal involvement in the mortgage market, *see generally* G. Nelson & D. Whitman, Real Estate Finance and Development 445–547 (1976), intended for federal courts to fashion a federal law to govern in suits of this nature. Nor does any distinctive federal policy provide a basis for the creation of federal common law here. The federal interest "is far too speculative, far too remote a possibility to justify the application of federal law to transactions essentially of local concern." *Bank of America National Trust & Savings Association v. Parnell,* 352 U.S. 29, 33–34, 77 S.Ct. 119, 121, 1 L.Ed.2d 93 (1956).

### IV.

Because the plaintiff's complaint does not raise a question of federal common law, it does not "arise under" federal law within the meaning of 28 U.S.C. § 1331. For the same reason, the contention that jurisdiction is proper under 28 U.S.C. § 1337 must also fail.[14] The district court, accordingly, was correct in dismissing the complaint for want of subject matter jurisdiction.

Affirmed.

facturers *National Bank,* 364 U.S. 603, 609 [, 81 S.Ct. 347, 350, 5 L.Ed.2d 323]. The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee . . . .

**14.** Even if the complaint raised a question of federal common law, whether the case could be considered one arising under an "Act of Congress" within the meaning of 28 U.S.C. § 1337 may be open to some question. We express no opinion on this issue.