E. R. EVANS, PLAINTIFF v. W. B. EVERETT, EARLY & WINBORNE, INC., AND STANDARD BRANDS, INC., NATIONAL PEANUT CORPORATION, A DIVISION OF STANDARD BRANDS, ORIGINAL DEFENDANTS AND SHIRLEY PIERCE, MARION ODOM AND LEBRON MORRIS, OWNERS OF FARMERS TOBACCO WAREHOUSE, AND FARMERS COOPERATIVE EXCHANGE, ADDITIONAL DEFENDANTS

No. 111

(Filed 6 September 1971)

1. **Uniform Commercial Code § 71— security interest in farm crops — sufficiency of financial statement**

A financing statement which (1) contains the signatures and addresses of the debtor and the secured party, (2) asserts that the collateral for a 1969 crop loan consists of crops grown on five different farms during the year, (3) describes the land on which the crops are grown, and (4) concludes the description with the statement that "same securing note for advanced money to produce crops for the year 1969," *is held* sufficient to constitute a security agreement and to give the secured party a security interest in the crops. G.S. 25-9-105(1)(h); G.S. 25-9-203(1)(b); G.S. 25-9-402(1).

2. **Uniform Commercial Code § 73— financing statement serving as security agreement**

A financing statement may serve as a security agreement if it meets the requirements of G.S. 25-9-105(1)(h) and G.S. 25-9-203(1)(b).

3. **Uniform Commercial Code § 73— creation of security interest — language of the instrument**

An instrument purporting to create a security interest must contain language which leads to the logical conclusion that it was the intention of the parties that a security interest be created.

ON *certiorari* to review the decision of the Court of Appeals (reported in 10 App. 435, 179 S.E. 2d 120) affirming the judgment of *Copeland, S. J.,* July 1970 Civil Session of HERTFORD.

Action to recover from the maker the balance due on a promissory note, and from purchasers the value of crops alleged to have been collateral securing the note.

The complaint and stipulations establish the following facts:

(1) On 23 January 1969, defendant W. B. Everett, a resident of Hertford County, executed and delivered to plaintiff his promissory note under seal in the amount of $75,000.00, due 15 November 1969, with interest at six per cent per annum until

Evans v. Everett

paid. The note contained the following: "This note is secured by Uniform Commercial Code financing statement of North Carolina."

(2) On the next day, 24 January 1969, there was filed in the office of the Register of Deeds in Hertford and Bertie Counties an identical financing statement. It contains the names and addresses of defendant Everett as the "debtor" and plaintiff as the "secured party." Both signed the statement. It asserts that the "statement *covers* the following types or items of collateral": The collateral is then described as all crops now growing or hereafter grown during 1969 on five certain farms in Bertie County, together with all farm machinery, implements, and equipment located on the described lands. The description of the collateral concluded with this statement: "same *securing* note for advanced money to produce crops for the year 1969." (Emphasis added.) The note and financing statement were the only documents which defendant Everett signed in connection with plaintiff's loan to him.

(3) Defendant Everett owes on the note in suit a balance of $24,418.57, with interest from 23 January 1969. Of the crops described in the financing statements defendants Early & Winborne, Inc., Standard Brands, Inc., and National Peanut Corporation purchased from defendant Everett peanuts valued in excess of $25,000.00; additional defendants Shirley Pierce, Marion Odom and Lebron Morris, trading as Farmers Tobacco Warehouse, and Farmers Cooperative Exchange of Ahoskie, North Carolina, purchased crops, the nature and value of which the record does not disclose. At the time of these purchases plaintiff's debt had not been discharged.

Plaintiff prays judgment against defendants for the sum of $24,418.57 together with interest, costs, and attorneys' fees.

All defendants except W. B. Everett and Farmers Cooperative Exchange moved to dismiss the action for the failure of the complaint to state a claim upon which relief can be granted. Copeland, J., allowed the motion and dismissed the action as to these movants. Plaintiff excepted to the judgment and appealed to the Court of Appeals, which affirmed the judgment. Upon plaintiff's petition we allowed *certiorari*.

*Pritchett, Cooke & Burch for plaintiff appellant.*

*Revelle and Burleson for Standard Brands, Inc., and National Peanut Corporation, a division of Standard Brands, original defendant appellees.*

*White, Hall & Mullen for Early & Winborne, Inc., original defendant appellee.*

SHARP, Justice.

This case—one of first impression—is governed by the Uniform Commercial Code (Code), G.S. 25-1-101 *et seq.,* which became effective on 1 July 1967. As of that date, the statutes which had previously governed agricultural liens for advances, G.S. 44-52 through G.S. 44-64, were expressly repealed by G.S. 25-10-102 (1).

[1]  The appeal presents one question: Does plaintiff have a security interest in certain 1969 crops which defendant Everett sold to the other defendants? The answer depends upon whether the financing statement executed by plaintiff and defendant Everett can also serve as a security agreement. To answer the question it is necessary to know the statutory definitions of the Code's terminology.

*"Security interest* means an interest in personal property or fixtures which secures payment or performance of an obligation." G.S. 25-1-201 (37).

*"Security agreement* means an agreement which creates or provides for a security interest. . . . " G.S. 25-9-105 (1) (h). In the Code the general term *security agreement* is used "in place of such terms as chattel mortgage, conditional sale, assignment of accounts receivable, trust receipt, etc." *See* the Official Comment under G.S. 25-9-105.

*"Secured party* means a lender, seller or other person in whose favor there is a security interest. . . . " G.S. 25-9-105 (1) (i).

*"Debtor* means the person who owes payment or other performance of the obligation secured. . . . " G.S. 25-9-105 (1) (d).

Subject to provisions of the Code not applicable to this case, "a security interest is not enforceable against the debtor or third parties unless (a) the collateral is in the possession of the secured party; or (b) the debtor has signed a security agree-

ment which contains a description of the collateral and in addition, when the security interest covers crops . . . a description of the land concerned." G.S. 25-9-203(1). *See* 44 N. C. L. Rev. 716, 723-724.

As pointed out in the Official Comment upon G.S. 25-9-203, formal requisites for a security agreement "are reduced to a minimum. The technical requirements of acknowledgment accompanying affidavits, etc. . . . are abandoned. The only requirements for the enforceability of nonpossessory security interests in cases not involving land are (a) a writing; (b) the debtor's signature; and (c) a description of the collateral or kinds of collateral. (Typically, of course, the agreement will contain much more) . . . . The formal requisites stated in this section are not only conditions to the enforceability of a security interest against third parties. They are in the nature of a Statute of Frauds." Absent a writing satisfying these formal requisites, a security interest is not enforceable even against the debtor.

In order to perfect a security interest in farm products, crops, and equipment used in farming operations from subsequently acquired rights of *third parties,* the secured party must file a financing statement in the county of the debtor's residence and also in the county where the land on which the crops are growing, or are to be grown, is located. G.S. 25-9-401(1)(a). *See* 44 N. C. L. Rev. 753, 761.

"A *financing statement* is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor, and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown or goods which are or are to become fixtures, the statement must also contain a description of the real estate concerned and the name of the record owner or record lessees thereof. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties." G.S. 25-9-402(1).

The Official Comment accompanying G.S. 25-9-402(1) explains that this section adopts a system of notice filing. "What

is *required* to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed *may* have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. Section 9-208 provides a statutory procedure under which the secured party, at the debtor's request, may be required to make disclosure." (Emphasis added.)

Subsection (3) of G.S. 25-9-402 sets out a form which, if substantially followed, will comply with the requirements for a financing statement. Here the parties used and substantially followed this form. They do not contend that the financing statement in suit fails to meet the requirements of the statute. It is defendants' contention that Everett signed no agreement which created or provided for a security interest in the collateral described in the financing statement, and that the financing statement cannot serve as a security agreement.

The Code distinguishes between a security agreement and a financing statement. The security agreement is a writing which (1) creates or provides for a security interest, (2) contains a description of the collateral, plus a description of the land involved "when the security interest covers crops or oil, gas or minerals to be extracted or timber to be cut," and (3) is signed by the debtor. The financing statement is a writing which (1) contains the signature and addresses of *both* the debtor and creditor and (2) a description of the collateral plus a description of the land involved "when the financing statement covers crops growing or to be grown or goods which are or are to become fixtures." The discrepancies between the formal requisites of a security agreement and a financing statement have been criticized as "confusing and unnecessary," and the failure of the two sections to mesh with respect to the description requirement called "inexcusable." 1 Gilmore, Security Interests in Personal Property, § 11.4 (1965).

[2] Although the financing statement need only be "a skeletonic statement" that the parties intend to engage in future transactions, which may never be consummated, G.S. 25-9-402(1) specifically provides that "a copy of the security agreement is sufficient as a financing statement" if it contains the

required information and is signed by both parties. We perceive no sound reason why a financing statement may not also serve as a security agreement if it meets the requirements of G.S. 25-9-105(1)(h) and G.S. 25-9-203(1)(b). This is the concensus of both opinion writers and commentators on the Code.

Although the Code contemplates the execution of two separate writings, it does not prohibit the combination of a security agreement and financing statement. In *American Card Company v. H. M. H. Company,* 97 R.I. 59, 196 A. 2d 150, a case upon which both appellant and appellees rely, the court held that *the financing statement in suit* (not reproduced in the opinion) could not qualify as a security agreement. It said: "It is not possible for a financing statement which does not contain the debtor's *grant* of a security interest to serve as a security agreement." *Id.* at 62, 196 A. 2d at 152. (Emphasis added.)

It appears that the Rhode Island court was of the opinion that technical words of conveyance from the debtor to the secured party were required to create a security interest. In criticizing *American Card,* Gilmore, a former Official Comment writer for Article 9 of the Code, in his treatise on Security Interests in Personal Property said: "Certainly, nothing in § 9-203 requires that the 'security agreement' contain a 'granting' clause. The § 9-402 financing statement contained all that was necessary to satisfy the § 9-203 statute of frauds as well as being sufficient evidence of the parties' intention to create a security interest in the tools and dies (the described collateral). No doubt the court would have upheld the security interest if the debtor had signed two pieces of paper instead of one. The § 9-402 provision that a short financing statement may be filed in place of the full security agreement was designed to simplify the operation. The Rhode Island court gives it an effect reminiscent of the worst formal requisites holding under the 19th century chattel mortgage acts." 1 Gilmore, Security Interests in Personal Property, § 11.4 at pp. 347-348 (1965).

Long before the adoption of the Code, this Court held that no particular form of words was necessary to create a lien or to constitute a chattel mortgage, and that, as between the parties, an *oral* mortgage was as good "as if it had been in writing, provided, if reduced to writing, it would have been valid." *White Co. v. Carroll,* 146 N.C. 230, 232-233, 59 S.E. 678, 679. *Accord, Kearns v. Davis,* 186 N.C. 522, 120 S.E. 52;

15 Am. Jur. 2d *Chattel Mortgages* § 38 (1964). In *Brown v. Dail,* 117 N.C. 41, 23 S.E. 45, it was held that a recorded "agreement that all logs cut, all lumber sawed, and every product of this business shall stand as security for all and any advancements made under this agreement" constituted a valid chattel mortgage. The Court said: "We think the agreement must be construed according to the manifest intent of the parties as a chattel mortgage. No particular form is essential, and the instrument has all of the constituents necessary to create a chattel mortgage."

In *Grier v. Weldon,* 205 N.C. 575, 578, 172 S.E. 200, 202, quoting Jones on Mortgages, § 24, it is said: "If a security for money is intended, that security is a mortgage, though not having on its face the form of a mortgage; it is the essence of a mortgage that it is a security." Thus, "[w]ords of conveyance are not essential to a mortgage although the absence of such words may be important in determining whether or not a transaction is a mortgage." 14 C.J.S., *Chattel Mortgages* § 50 (1939). By the same token, any written agreement signed by a debtor which recites that certain personalty is being encumbered as security for a debt ought to operate as a security agreement under Code § 25-9-105(1)(h). 18 Ark. L. Rev. 30, 34.

[3] While there are no magic words which create a security interest there must be language in the instrument which "leads to the logical conclusion that it was the intention of the parties that a security interest be created." *In re Nottingham,* 6 U.C.C. Rep. 1197, 1199 (U.S. D.C. Tenn. 1969).

A financing statement which does no more than meet the requirements of Code § 25-9-402 will *not* create a security interest in the debtor's property. *General Electric Credit Corporation v. Bankers Commercial Corporation,* 244 Ark. 984, 429 S.W. 2d 60. As the Supreme Court of Iowa said in *Kaiser Aluminum and Chemical Sales, Inc. v. Hurst,* 176 N.W. 2d 166, 167 (Iowa 1970), "The cases uniformly hold that a financing statement does not ordinarily *create* a security interest. It merely gives notice that one is or may be claimed. These same authorities hold a financing statement *may* double as a security agreement if it contains appropriate language which grants a security interest." *See* Annot, 30 A.L.R. 3d 9, 42-44, 46-48.

Our research has disclosed no case involving writings identical with the note and financing statement in this case. The

opinions in the cases on which defendants rely do not reproduce the financing statements which the creditors contended could double as security agreements. These decisions, however, are based upon the premise that the financing statement involved contained no language which could be interpreted as granting, creating, or providing for a security interest. *Mid-Eastern Electronics, Inc. v. First Nat. Bank of So. Md.,* 380 F. 2d 355 (4th Cir. 1967) ; *Central Arkansas Milk Producers Ass'n v. Arnold,* 239 Ark. 799, 394 S.W. 2d 126. *M. Rutkin Elect. Sup. Co., Inc. v. Burdette Elect., Inc.,* 98 N.J. Super. 378, 237 A. 2d 500; *Safe Deposit Bank & Trust Company v. Berman,* 393 F. 2d 401 (1st Cir. 1968) ; *Kaiser Aluminum & Chemical Sales, Inc. v. Hurst, supra.*

[1]   In this case the financing statement declares that it *"covers the following type of collateral:* (all crops now growing or to be planted on 5 specified farms) *same securing note for advanced money to produce crops for the year 1969."* The note contains the statement that it "is *secured* by Uniform Commercial Code financing statement of North Carolina." (Emphasis added.)

We harbor no doubt that the instant financing statement and the note manifest defendant Everett's intent to create in plaintiff a security interest in the described collateral and that he did, in fact, provide for such interest when he stated that the crops described therein *secure* the note for money advanced to produce these crops.

Black's Law Dictionary 1521 (4th ed. 1951) defines *secure* as "to give security; to assure payment, performance, or indemnity; to guaranty or make certain the payment of the debt or discharge of an obligation . . . one 'secures' his creditor by giving him a lien, mortgage, pledge or other security to be used in case the debtor fails to make payment."

*In re Center Auto Parts,* 6 U.C.C. Rep. 398 (U.S. D.C. Calif. 1968), was a case in which the bankrupt's note recited, "This note is secured by a certain financing statement." The financing statement is not set out in the opinion, but it was noted that only one financing statement had been filed with the Secretary of State. The District Court held "that the note together with the financing statement executed by the bankrupt creates in the respondent a valid security interest in the personal property (described in the statement)."

Evans v. Everett

In 2 Bender's Uniform Commercial Code Service (Hart & Willier) § 91A.13 (1970) it is said: "Clearly, if the financing statement contains the elements for a security agreement in addition to those for the financing statement, it would serve as the security agreement. The additional elements would be (1) Something to indicate agreement; (2) A statement of the obligation or obligations secured; (3) Provision for or creation of the security interest."

The financing statement in this case contains language clearly manifesting the debtor's intent to grant, create, and provide for a security interest. It bears his signature; it describes the obligation secured, the collateral subject to the security interest, and the land involved. We hold, therefore, that the financing statement in question meets the requirements of an enforceable security agreement and serves the double purpose. However, we emphasize that this financing statement meets the Code's *minimum* requirements. As this case demonstrates, it is an example of draftsmanship likely to produce litigation and not to be recommended.

One writer has suggested that a security agreement should contain at least "(1) the names and addresses of both the secured party and the debtor; (2) a description of the collateral; (3) a description of the underlying obligation for which the security was given; (4) a recital of the rights and liabilities of each party on default; (5) the signature of each party; and (6) any other provisions necessary to meet the exigencies of the individual transaction." 25 U. Pitt. L. Rev. 619, 621 (1964).

The decision of the Court of Appeals is reversed with directions that it remand the cause to the Superior Court for the entry of judgment consistent with this opinion.

Reversed.