641 F.2d 185
 30 UCC Rep.Serv. 1431
 UNITED VIRGINIA BANK/SEABOARD NATIONAL, a National Banking
Association, Appellant,
and
Virginia National Bank, a National Banking Association,
Plaintiff/Intervenor,
v.
B. F. SAUL REAL ESTATE INVESTMENT TRUST, Appellee,
and
Northeast Contract Drapery, Inc., Charles L. Marcus,
Trustee; and National Hotel Management
Corporation, Defendants.
In re TRIANGLE INN ASSOCIATES, a Virginia Limited
Partnership, d/b/a Holiday Inn Scope, Bankrupt.
VIRGINIA NATIONAL BANK, a National Banking Association, Appellant,
and
United Virginia Bank/Seaboard National, a National Banking
Association, Plaintiff/Intervenor,
v.
B. F. SAUL REAL ESTATE INVESTMENT TRUST, Appellee,
and
Northeast Contract Drapery, Inc., Charles L. Marcus,
Trustee; and National Hotel Management
Corporation, Defendants.
In re TRIANGLE INN ASSOCIATES, a Virginia Limited
Partnership, d/b/a Holiday Inn Scope, Bankrupt.
 Nos. 80-1262, 80-1263.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 4, 1980.
Decided Feb. 20, 1981.
 
 James L. Miller, Norfolk, Va. (Williams, Worrell, Kelly & Greer, Norfolk, Va., on brief), and Charles W. Best, Jr., Norfolk, Va. (Kaufman & Oberndorfer, Norfolk, Va., on brief), for appellant.
 Robert B. Robbins, Washington, D. C. (Leslie A. Nicholson, Jr., David Lawrence Miller, Shaw, Pittman, Potts & Trowbridge, Washington, D. C., David H. Adams, Taylor, Walker & Adams, Norfolk, Va., on brief), for appellee.
 Before HAYNSWORTH, Chief Judge, FIELD, Senior Circuit Judge, and PHILLIPS, Circuit Judge.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 This appeal involves a challenge by two banks, United Virginia Bank (UVB) and Virginia National Bank (VNB) (collectively, the banks) to the validity of a security interest claimed by B. F. Saul Investment Trust (Saul Trust) in certain personal property included in the bankrupt estate of Triangle Inn Associates (Triangle) and used in operation of the Holiday Inn-Scope in Norfolk, Virginia. The banks have liens on this personal property, but the liens are junior to a deed of trust from Triangle to the Saul Trust under which the latter claims its security interest. The district court, affirming the bankruptcy judge, upheld the validity, and hence the priority, of the Saul Trust's claimed security interest. We affirm the district court.
 
 
 2
 * To secure an indebtedness of $7 million, Triangle executed a deed of trust on December 15, 1972 for the benefit of the Saul Trust. The granting clause of this deed of trust refers only to the property described in Schedule A; that schedule, in turn, describes only real property. Under the "Definitions" section of the deed of trust, however, the "mortgaged property" is defined as the "land and the buildings and the fixtures and the personalty." "Personalty" is then defined as "all furniture, furnishings, equipment, machinery and all other personal property ... now or hereafter located (on the property) as more specifically described in Schedule B." This schedule was apparently never prepared and attached to the deed of trust, but the definition goes on to provide that Schedule B is not required to identify the property secured. Finally, "security agreement" is defined as the "security agreement contained in this Deed of Trust, wherein and whereby Grantor grants a security interest in the personalty and the fixtures to Beneficiary."
 
 
 3
 In the "Representations and Warranties" section of the deed of trust, the grantor warrants that it has "marketable title to the fixtures and personalty" free and clear of all encumbrances, with the exception of "some of the personalty (that) has been leased from others and is expressly excluded herefrom." Further, in the "Negative Covenants" section of the deed of trust, the grantor covenants that it "will not permit any of the fixtures or personalty to be removed without the consent of the Saul Trust unless the grantor replaces the article with another of equal suitability and value." In addition, the grantor gives the further assurance that it will execute any additional "financing statements ... or other security agreements which may ... be reasonably required to ... preserve the security of the mortgaged property." Finally, the Saul Trust is expressly empowered under the deed of trust to take possession of the "mortgaged property" upon default by the grantor in payment of the secured indebtedness, to operate the "mortgaged property" or to sell the "mortgaged property."
 
 
 4
 Execution of the deed of trust was followed on December 27, 1972 by the filing of a financing statement by the Saul Trust, which described the collateral as "one lot of personal property being the furniture, fixtures and equipment of and located in the Holiday Inn-Scope, Norfolk, Virginia." On June 16, 1975, Triangle and the Saul Trust entered into a "First Supplement to Deed of Trust," which provided for the substitution of trustees and the addition of a provision dealing with some ancillary warranty and indemnity agreements. On March 8, 1976, Triangle and the Saul Trust entered into a "Second Supplement to Deed of Trust," which added a provision authorizing the Saul Trust to bring in "independent management" to operate the Holiday Inn-Scope. Both supplements stated that, unless expressly referred to or treated in the supplements, all provisions of the original deed of trust remained in full force and effect; neither supplement made any reference to the Saul Trust's rights in the hotel personal property.
 
 
 5
 By deed of trust dated March 22, 1973, Triangle again conveyed the real and personal property of the Holiday Inn-Scope in trust to secure an indebtedness of $450,000 to UVB. UVB filed a financing statement covering the personal property. This deed of trust and financing statement constituted at least a second lien on the Holiday Inn-Scope personal property.
 
 
 6
 By deed of trust dated June 16, 1975, Triangle conveyed the real and personal property of the Holiday Inn-Scope in trust to secure an indebtedness of $1,688,149.88 to VNB. VNB also filed a financing statement covering the personal property. This deed of trust and financing statement constituted at least a third lien on the Holiday Inn-Scope personal property.
 
 
 7
 In September 1976 the Saul Trust commenced foreclosure proceedings against the Holiday Inn-Scope property following Triangle's default under its deed of trust to the Saul Trust. Triangle promptly filed a Petition for an Arrangement under Chapter XII of the old Bankruptcy Act, and the Saul Trust was compelled to suspend its foreclosure on the Holiday Inn-Scope property by the automatic stay that intervenes to protect the debtor's estate in a bankruptcy proceeding. See Bankr.R. 12-43.
 
 
 8
 The Saul Trust then filed a complaint for relief from the stay in which both UVB and VNB were allowed to intervene and answer. The banks argued that the Saul Trust could show no necessity for relief from the stay because the value of the property exceeded the Saul Trust's lien of $5.3 million. Both banks pointed to an appraisal prepared for the Saul Trust by the Real Estate Research Corporation that valued the Holiday Inn-Scope property at $6,675,000 on May 2, 1975. Included in this appraisal was a valuation of $675,000 for "furniture, fixtures & equipment." In denying the Saul Trust relief from the stay, the bankruptcy court relied heavily on its finding that the 1975 appraisal demonstrated that there was equity in the Holiday Inn-Scope property well in excess of the Saul Trust's lien on that property. In re Triangle Inn Associates, No. 76-954-N, slip op. at 5-8 (Bankr.Ct.E.D.Va. Dec. 29, 1976).
 
 
 9
 On April 1, 1977, Triangle filed its plan of arrangement. In its September 15, 1977 confirmation of that plan, the bankruptcy court noted that UVB and VNB were "enthusiastic in their support of the debtor's plan." In re Triangle Inn Associates, No. 76-954-N, slip op. at 5 (Bankr.Ct.E.D.Va. Sept. 15, 1977). A plan that the bankruptcy court could confirm was required to include adequate protection for creditors who refused to accept the plan. See Bankruptcy Act of 1898, ch. 541, § 461(11), as amended by Chandler Act of 1938, ch. 575, § 1, 52 Stat. 922 (repealed 1979). The Saul Trust refused to accept Triangle's plan, but the bankruptcy court concluded that it was reasonable to "cram down" the plan on the Saul Trust because "Saul is fully secured by virtue of the Inn's value (which included the value of the personal property) handsomely exceeding Saul's debt." In re Triangle Inn Associates, No. 76-954-N, slip op. at 5 (Bankr.Ct.E.D.Va. Sept. 15, 1977).
 
 
 10
 Despite the best efforts of all involved, Triangle was unable to fulfill its obligations under its plan of arrangement, and on January 17, 1979 the bankruptcy court entered an order granting the Saul Trust leave to take possession of the Holiday Inn-Scope and to foreclose on its deed of trust. In re Triangle Inn Associates, No. 76-954-N (Bankr.Ct.E.D.Va. Jan. 17, 1979). The property was bought in at foreclosure by the Saul Trust on February 12, 1979, and the trustee's deed conveyed to the Saul Trust all the personal property in which it held a security interest under its deed of trust.
 
 
 11
 On August 24, 1979, UVB and VNB were allowed to intervene in a proceeding entitled Halloran v. Triangle Inn Associates, and in a complaint filed August 27, 1979 the banks for the first time argued that the deed of trust held by the Saul Trust on the Holiday Inn-Scope did not create a security interest in personal property. In an order entered October 3, 1979, the bankruptcy court concluded that the Saul Trust did hold a security interest in the Holiday Inn-Scope personal property and that in any event, the issue having been previously litigated by the parties, the court's previous rulings recognizing the security interest were res judicata. Halloran v. Triangle Inn Associates (In re Triangle Inn Associates ) No. 76-954-N (Bankr.Ct.E.D.Va. Oct. 3, 1979). Following the court's acceptance of a memorandum of settlement entered into by the other parties to the proceeding and some procedural maneuvering by the banks, the bankruptcy court entered an order that effectively closed the bankruptcy proceeding involving Triangle. Halloran v. Triangle Inn Associates (In re Triangle Inn Associates ), No. 76-954-N (Bankr.Ct.E.D.Va. Nov. 14, 1979).
 
 
 12
 UVB and VNB then instituted this action in the United States District Court for the Eastern District of Virginia, seeking review of the orders of the bankruptcy court recognizing the Saul Trust's security interest in the Holiday Inn-Scope personal property. The district court found no merit in this action and affirmed the orders of the bankruptcy court. The district court held that the Saul Trust's deed of trust of December 15, 1972 did give it a security interest in the Holiday Inn-Scope personalty.
 
 
 13
 The court also held that UVB and VNB were barred from relitigating the issue for three reasons. First, it concluded that the banks were estopped by their assertion earlier in the bankruptcy proceeding that the Saul Trust did have a security interest in the personal property. Second, it found that the bankruptcy court's earlier decisions denying the Saul Trust relief from the automatic stay and approving Triangle's plan of arrangement, in which the court had relied on the Saul Trust's security interest in the personalty, were res judicata on the issue. Third, the court concluded that, under the Bankruptcy Act of 1898, ch. 541, § 473(1), as amended by Chandler Act of 1938, ch. 575, § 1, 52 Stat. 924 (repealed 1979), an arrangement confirmed by a bankruptcy judge had the same effect as a judgment rendered by a district court, which also barred relitigation under the doctrine of res judicata. United Virginia Bank v. Marcus (In re Triangle Inn Associates ), No. 79-1102-N (E.D.Va. Feb. 15, 1980).
 
 II
 
 14
 UVB and VNB challenge the validity of the Saul Trust's security interest in the Holiday Inn-Scope personal property under Virginia's enactment of Article 9 of the Uniform Commercial Code (UCC) and more specifically under Va.Code § 8.9-203(1)(b), which provides that a security interest is not enforceable unless the "debtor has signed a security agreement which contains a description of the collateral." Since Triangle signed the deed of trust to Saul Trust and the collateral is sufficiently described as "all furniture, furnishings, equipment, machinery and all other personal property ... located" on the premises of the Holiday Inn-Scope, see, e. g., In re Fibre Glass Boat Corp., 324 F.Supp. 1054 (S.D.Fla.), aff'd, 448 F.2d 781 (5th Cir. 1971), the issue raised by the banks' challenge is basically one of whether there is sufficient flesh in the December 15, 1972 deed of trust to qualify that document as an "agreement" for the security of personalty. Looking to the totality of the language found in the deed of trust, we affirm the district court's resolution of this issue in favor of the Saul Trust.
 
 
 15
 While the primary purpose of the Saul Trust's deed of trust was obviously to create a lien on the Holiday Inn-Scope real property under the strict requirements of property law, the secondary objective of creating a security interest in the hotel personalty was no less clearly effectuated under the relatively less stringent provisions of the UCC. It is true that the definitions of "mortgaged property" and "personalty" found in the "Definitions" section of the deed of trust cannot, standing alone, be given substantive effect and used to establish a security interest. These defined words, however, are used throughout the substantive portions of the deed of trust, including the sections on "Representations and Warranties," "Affirmative Covenants," "Negative Covenants," and, most importantly, "Default and Foreclosure."
 
 
 16
 The banks place great emphasis on the absence of any language in the deed of trust to the Saul Trust that expressly "grants" a security interest in personal property. Professor Gilmore has rejected a similar argument, however, as a return to the antiquated formalism that the UCC was designed to replace. 1 G. Gilmore, Security Interests in Personal Property § 11.4 at 348 (1965). As the court noted in Evans v. Everett, 279 N.C. 352, 358, 183 S.E.2d 109, 113 (1971), "there are no magic words which create a security interest," and even a document ostensibly denominated a lease has been found to create a security interest, In re Walter W. Willis, Inc., 313 F.Supp. 1274 (N.D.Ohio 1970), aff'd, 440 F.2d 995 (6th Cir. 1971). We believe that Triangle and the Saul Trust intended to create a security interest in personal property and that the deed of trust of December 15, 1972 contains language sufficient to effectuate that intent under the UCC. See generally J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 23-3 (1972).
 
 
 17
 Moreover, without addressing the merits of the district court's discussion of res judicata doctrine, we agree with the district court's conclusion that the banks were estopped from relitigating the security interest issue by their earlier inconsistent position in the bankruptcy proceeding. The banks challenge this finding of the district court on the ground that it did not comply with the requirements for finding equitable estoppel laid down by this court in American Security & Trust Co. v. Fletcher, 490 F.2d 481, 485 (4th Cir. 1974). American Security is inapposite in the present case, however, because we are dealing with the doctrine of judicial estoppel "or preclusion against inconsistent position, (which) is designed to protect the integrity of the courts and the judicial process." Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1177-79 (D.S.C.1975). Invoking this doctrine, courts have prohibited litigants from "playing 'fast and loose,' " Scarano v. Central R. R., 203 F.2d 510, 513 (3d Cir. 1953), or "blow(ing) hot and cold," Ronson Corp. v. Liquifin Aktiengesellschaft, 375 F.Supp. 628, 630 (S.D.N.Y.1974), by barring them from taking inconsistent positions during the course of litigation.
 
 
 18
 In arguing for the denial of the Saul Trust's request for relief from the automatic stay and for the approval of Triangle's plan of arrangement that was "crammed down" on the Saul Trust, UVB and VNB asserted that the lien of the Saul Trust was adequately protected because the value of the Holiday Inn-Scope property, including $650,000 in personal property, was far in excess of the amount of Triangle's debt to the Saul Trust. Only when Triangle defaulted on its plan and the bankruptcy court allowed the Saul Trust to revive the foreclosure action that had been suspended almost two and one-half years by the bankruptcy proceeding did the banks begin to assert the contrary position that the Saul Trust's security did not include personal property. It was perfectly proper for the bankruptcy and district courts below to prohibit the banks from "blowing hot and cold" in this fashion.
 
 
 19
 For the foregoing reasons, we affirm the judgment of the district court, which in turn affirmed the bankruptcy court's order granting summary judgment to the Saul Trust.
 
 
 20
 AFFIRMED.