In re MURRAY BROTHERS, INC.,
d/b/a Maroon Convenience Mart
ID#: 56–1416145, Debtor.

Bankruptcy No. S–85–00633–5.

United States Bankruptcy Court,
E.D. North Carolina.

Sept. 12, 1985.

Holmes P. Harden, Raleigh, N.C., Trustee.

William C. Lawton, Raleigh, N.C., for debtor.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

This matter comes on to be heard upon the July 24, 1985, Objection to Claim filed by Holmes P. Harden, trustee, objecting to the secured claim of Albert Joseph Maroon, Jr., for $60,000, plus interest, and upon the August 12, 1985, Request for Hearing filed by William C. Lawton, attorney for Mr. Maroon. The hearing was held on September 3, 1985, in Raleigh, North Carolina.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157 and the general order of reference from the United States District Court for the Eastern District of North Carolina entered on August 3, 1984. This proceeding is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O), in which this court may enter a final order. 28 U.S.C. § 157(b)(1).

## FACTS

The debtor filed its chapter 7 petition on April 12, 1985, listing as assets the inventory, furniture, fixtures, and equipment located on its business premises known as Maroon's Convenience Mart. Pursuant to the court's May 31, 1985, Order Transferring Liens to Proceeds of Sale, the trustee sold the debtor's furniture, fixtures, equipment, and inventory free and clear of liens at public sale on June 1, 1985, for $8,166.88. The court's order also provided that the purported security interests of Albert Joseph Maroon, Jr., and Equipment Group I be transferred to the proceeds of sale in order of priority after deduction of all sales costs. In attempting to establish the priority of claims to the remaining sales proceeds, the trustee has filed an objection to Mr. Maroon's secured claim, filed in the amount of $60,000, plus interest. No objection to the amount of Mr. Maroon's claim has been raised. The trustee argues that Mr. Maroon's purported security interest never attached, and therefore, Mr. Maroon has nothing more than an unsecured claim. Mr. Maroon asserts that he has a valid, perfected first security interest in the debtor's property and should be entitled to the remaining sale proceeds.

The debtor purchased all the assets of Maroon's Convenience Mart from Albert J. Maroon, Jr., for $105,000. The debtor took possession of the assets and operated the business until bankruptcy. A sales agreement dated May 25, 1984, signed in connection with the sale provides that it "sets forth the entire understanding of the parties with respect to the transactions contemplated ... and shall not be modified or amended except by the written consent of the parties." Maroon's Exhibit #1, Sales Agreement at 2. The debtor paid $45,000 of the purchase price in cash at closing, and the $60,000 balance, with 12% interest per annum, was to be paid in monthly installments over seven years as evidenced by a promissory note dated May 25, 1984, (also Maroon's Exhibit #1) executed by Alton Wallace Murray, individually, and as president of Murray Brothers, Inc., and attested to and executed individually by James Gregory Murray, corporate secretary. On May 24, 1984, a financing statement covering "[f]urniture, fixtures, equipment and inventory on premises at 3600 North Boulevard, Raleigh, North Carolina"

(the address of Maroon's Convenience Mart) was signed for Murray Brothers, Inc., "debtor," by Alton W. Murray, and by Albert Joseph Maroon, Jr., as the "secured party." The financing statement was recorded in the offices of the North Carolina Secretary of State and the Wake County, North Carolina, Register of Deeds on May 25, 1984. The parties did not, however, execute a security agreement granting Mr. Maroon a security interest in the assets he had sold to the debtor, and the sales agreement, promissory note, and financing statement (all Maroon's Exhibit #1) make no reference to any security, security agreement, or intent to create a security interest in those assets.

The attorney who closed the sale for the parties testified that there is no other document in his office file to indicate that a security agreement was prepared or executed.

Payments under the promissory note were regularly made to Mr. Maroon by the debtor until March, 1985. Being in default and unable to make further payments on its primary obligation, the debtor filed this chapter 7 petition on April 12, 1985.

The question before the court is whether Mr. Maroon has a security interest in the debtor's furniture, fixtures, equipment, and inventory sold by the trustee, and therefore, whether he has a priority claim to the proceeds remaining from the sale.

## DISCUSSION AND CONCLUSIONS

Under the Uniform Commercial Code ("UCC"), a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach to the collateral unless three things occur: (1) the collateral must either be in the secured party's possession pursuant to agreement or the debtor must have "signed a security agreement which contains a description of the collateral," (2) value must have been given to the debtor by the secured party, and (3) the debtor must have rights in the collateral. N.C.GEN.STAT. § 25-9-203(1). The UCC defines security interest as, "an interest in personal proper-ty or fixtures which secures payment or performance of an obligation," (N.C.GEN. STAT. § 25-1-201(37)), and security agreement means "an agreement which creates or provides for a security interest." N.C. GEN.STAT. § 25-9-105(1)(h). N.C.GEN. STAT. § 25-9-203, by its terms, clearly requires that a security agreement be written absent possession of the collateral by the secured party. The formal requirement of a written security agreement is in the nature of a statute of frauds, and "when bankruptcy occurs the anti-fraud function of the written security agreement serves mostly to protect third-party creditors." J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code*, § 23-3, at 903 (2d ed. 1980) [hereinafter cited as *White & Summers*]; N.C.GEN.STAT. § 25-9-203, Amended Official Comment 5.

The debtor obtained value and rights in the assets it received, and the debtor, not Mr. Maroon, had possession of the assets following the sale. The question, therefore, is whether a written security agreement was properly executed.

Counsel for Mr. Maroon argues that a security agreement may be found by combining the sales agreement, the promissory note, the financing statement, and the parties' intent.

It is true that a security agreement need not be denominated as such and need not be a separately executed document to be enforceable. Many courts have found enforceable security agreements where no separately executed written agreements existed. *United Virginia Bank v. B.F. Saul Real Estate*, 641 F.2d 185 (4th Cir.1981) (within deed of trust); *In re Numeric Corp.*, 485 F.2d 1328 (1st Cir.1973) (financing statement and board of directors resolution); *In re Carmichael Enterprises, Inc.*, 334 F.Supp. 94 (N.D.Ga.1971) (financing statement and written correspondence). *See*, B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code*, ¶¶ 2.2[1] and 2.2[6] (1980, and Cum.

Supp. No. 1 1985) [hereinafter cited as *Clark*].

In the leading North Carolina case of *Evans v. Everett*, 279 N.C. 352, 183 S.E.2d 109 (1971) *, the North Carolina Supreme Court held that a promissory note and a financing statement, when read together, were sufficient to create a security agreement. In reaching its decision, the court focused on language in the promissory note which read, "[t]his note is secured by Uniform Commercial Code financing statement of North Carolina," and language in the financing statement following the collateral description which provided, "same *securing* note for advanced money to produce crops for the year 1969." (Emphasis added by court). The court concluded that since the financing statement contained, "language clearly manifesting the debtor's intent to grant, create, and provide for a security interest," and since it bore the debtor's signature, and described the obligation to be secured, the collateral subject to the security interest, and the land involved (a requirement when crops are collateral), the financing statement met the requirements of a security agreement and could serve as such. *Evans*, 279 N.C. at 360, 183 S.E.2d 109. The court was careful to point out, however, that, "this financing statement meets the Code's *minimum* requirements." (Emphasis original); *Evans*, 279 N.C. at 360, 183 S.E.2d 109.

The critical question is whether, "the documentation as a whole fairly reflects a meeting of the debtor's and creditor's minds on the matter." *Clark*, ¶ 2.2[1], at 52–5 (Cum.Supp.No. 1 1985). The Fourth Circuit Court of Appeals, applying the UCC as adopted in Virginia, has recognized that, though explicit language "granting" a security agreement is not necessary, there must appear within the transaction documents language showing an intent to create a security interest before a security agreement may be found. *B.F. Saul Real Estate*, 641 F.2d at 189.

■ Clearly under the minimum requirements enunciated by the North Carolina Supreme Court in *Evans v. Everett*, and under other cases finding security agreements in a document or series of documents not denominated as such, one common thread is found in every case, the intent to create a security agreement must appear on the face of a written document or documents executed by the debtor. None of the documents presented to the court by Mr. Maroon show any intent to create a security interest. The promissory note and financing statement make no reference to any security or security interest as in *Evans v. Everett*. The sales agreement recites an absolute sale with no reference to security for the debt owed to Mr. Maroon; the agreement, in fact, states by its own terms that it is the entire agreement of the parties and may not be amended or modified except by the written consent of the parties.

■ Mr. Maroon's attorney argued that the intent to create a security interest in the assets sold by Mr. Maroon to the debtor is found in the parties' act of signing and filing a financing statement. Counsel argued that the parties would file a financing statement for no other reason than to perfect a security interest.

Financing statements may be filed to perfect a security interest after or contemporaneously with the attachment of a security agreement, but that is not their only use. A financing statement may also be filed before the attachment of a security interest as a notice to third parties that a security interest may be claimed in the future by the filing party. Priority of the claimant's security interest would then date back to the date of filing. N.C.GEN. STAT. § 25–9–312(5)(a); R. Lord & C. Lewis, *North Carolina Security Interests*, § 3–2(a), at 32 (1985). Since a financing statement may be filed for reasons other

---

* Two North Carolina commentators have criticized *Evans v. Everett*, 279 N.C. 354, 183 S.E.2d 109 (1971) as being much too liberal in finding a security agreement and urge that it be over-

turned or otherwise limited. *See*, R. Lord & C. Lewis, *North Carolina Security Interests*, § 3–1(A) (1985).

than the perfection of an existing security interest, the filing of a financing statement alone is not enough to create a security interest; "it is but one step in the means by which the rights and priorities of a secured party are 'perfected.'" *Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland*, 380 F.2d 355, 356 (4th Cir.1967); *Evans*, 279 N.C. at 358; *E–B Grain Co. v. Denton*, 73 N.C. App. 14, 19, 325 S.E.2d 522 (1985).

Counsel for Mr. Maroon further asserted that the court should consider parol evidence, the testimony of the parties to the transaction, in determining whether the parties actually intended to create a security interest in the debtor's assets.

The determination of whether a security interest exists is a two-step process. First, the court must determine as a question of law whether the language in the writing required by N.C.GEN.STAT. § 25–9–203 objectively indicates that the parties intended to create a security interest. If the statute of frauds requirement is met, then the factfinder must determine whether the parties actually intended to create a security interest. Parol evidence may be admitted to interpret an ambiguous writing but may not be introduced to satisfy the statute of frauds requirement. *White & Summers*, § 23–3, at 905. Since writings have not been introduced to satisfy the statute of frauds requirement, the court may not consider parol evidence to determine the parties' intent at the time of the transaction.

Although the parties may have, in fact, intended that Mr. Maroon receive a security interest in the goods he sold to Murray Brothers, Inc., the law clearly requires that the intent to create a security interest be stated in writing. The parties failed to execute such a writing, and applying the minimum requirements enunciated in *Evans v. Everett*, no such writing may be found. Mr. Maroon's failure to obtain a written security agreement from the debtor, as required by the law, is fatal to his secured claim, and the trustee's objection to his claim must be allowed. Accordingly,

IT IS HEREBY ORDERED that the trustee's objection to the secured claim of Albert Joseph Maroon, Jr., is ALLOWED; and

IT IS FURTHER ORDERED that the claim of Albert Joseph Maroon, Jr., be, and hereby is, allowed as an unsecured claim.