**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
**FOR THE FOURTH CIRCUIT**

In Re: BONDS DISTRIBUTING
COMPANY, INCORPORATED,

*Debtor.*

---

BRUCE MAGERS, Trustee for Bonds
Distributing Company, Incorporated,
*Plaintiff-Appellee,*

and

WILLIAM L. MILLS, III, d/b/a The
Mills Law Firm,
*Third Party Defendant-Appellee,*

v.

BONDS, INCORPORATED,
*Defendant-Appellant,*

and

DONALD R. BONDS,
*Defendant & Third Party Plaintiff-
Appellant.*

No. 01-2025

In Re: BONDS DISTRIBUTING
COMPANY, INCORPORATED,

*Debtor.*

WILLIAM L. MILLS, III, d/b/a The
Mills Law Firm,
    *Third Party Defendant-Appellant,*

and

BRUCE MAGERS, Trustee for Bonds
Distributing Company, Incorporated,
    *Plaintiff,*

v.

BONDS, INCORPORATED,
    *Defendant-Appellee,*

and

DONALD R. BONDS,
    *Defendant & Third Party Plaintiff-
Appellee.*

No. 01-2503

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., District Judge.
(CA-01-80-1, BK-97-52130C-7W)

Argued: May 7, 2002

Decided: July 15, 2002

Before WIDENER and MICHAEL, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Reversed and remanded by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Richard Stewart Gordon, Charlotte, North Carolina, for Appellants. Grover Gray Wilson, WILSON & ISEMAN, L.L.P., Winston-Salem, North Carolina; Thomas William Waldrep, Jr., BELL, DAVIS & PITT, P.A., Winston-Salem, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Donald R. Bonds (Bonds), Bonds, Inc. and William L. Mills III (Mills) appeal from an order of the district court affirming a decision by the bankruptcy court which held that the absence of a creditor's address on a North Carolina UCC-1 financing statement prevented the perfection of a security interest. For the reasons outlined below, we reverse.

I.

Bonds owned and operated a distributor of small engine parts, Bonds Distributing Company, Inc. (BDI), for approximately nineteen years. In 1995, Bonds sold BDI to Steve Young, and Mills served as Bonds' attorney for the transaction. It is undisputed that the agreement between Bonds and Young provided that at the closing of the sale on November 7, 1995, Young would pay Bonds $150,000 for ten percent of the outstanding shares of BDI. The remaining shares, minus a single share which Bonds retained, were to be redeemed by BDI. The redemption was seller-financed, meaning Bonds accepted a

Stock Purchase Note from BDI in the amount of $1,451,000 (the net asset value of the remaining stock) for the surrender of his shares.

The Stock Purchase Note was secured by an agreement under which BDI granted Bonds a security interest in all of its assets. To perfect Bonds' security interest, UCC-1 financing statements were prepared and signed at the closing. Pursuant to the law then in effect, these financing statements were filed with the North Carolina Secretary of State and at the Office of the Register of Deeds for Cabarrus County. N.C. Gen. Stat. § 25-9-401(a)(c) (repealed 2001). The statement filed with the Secretary of State[1] failed to provide an address for Bonds as the secured party; however, the document was accepted and filed by the Secretary.

In July 1997, BDI defaulted on its payments to Bonds under the Stock Purchase Note. On August 21, 1997, Bonds proceeded to reacquire the assets of BDI through a foreclosure sale permitted by the agreement. The lone bid at the sale was made by Bonds, Inc., a separate company that Bonds formed, in the amount of $1,484,391.11.

Approximately two months after the foreclosure sale, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against BDI. An order for relief was entered in the bankruptcy court and Bruce Magers was named as Trustee. On August 14, 1998, the Trustee filed an adversary proceeding in the bankruptcy court asserting, among other things, that Bonds never acquired a perfected security interest in BDI's assets as a result of his failure to include an address on the UCC-1 financing statement filed with the Secretary of State. In addition to denying the Trustee's claim, Bonds filed a third-party complaint seeking indemnification from his attorney, Mills, based on a malpractice theory, for his failure to include the address on the financing statement.

---

[1]The evidence establishes that Bonds decided not to use his residence address on business-related documents so he rented a post office box the day after the closing. This new address was placed on the County filing by Mills and forwarded to Young's attorney for inclusion on the State filing. This was never done.

Various motions for summary judgment were filed by the parties. The bankruptcy court entered an order granting partial summary judgment in favor of the Trustee on the defective security interest claim, finding as a matter of law that Bonds' security interest was invalid as a result of the omitted address. The bankruptcy court denied Mills' motion for summary judgment. The district court affirmed in all respects.

The bankruptcy court also determined that Bonds had a right to have a jury resolve the remaining issues in the case, many of which are not relevant to this appeal. The district court withdrew the bankruptcy reference so that a jury trial could proceed. A trial was held to determine, among other things, what damages were due to BDI from Bonds on the security interest claim. In addition, Bonds' third-party malpractice-indemnity claim against Mills was submitted to the jury. The jury found that Bonds owed the Trustee $1,400,000 in damages. The jury assessed an identical amount against Mills under Bonds' malpractice claim. Mills filed several post-trial motions, all of which were denied.

Bonds appeals from the bankruptcy court's partial summary judgment order, affirmed by the district court, holding that the omission of an address from a financing statement prevents the perfection of a security interest. Mills also appeals that order, and, in addition, appeals from the denial of his post-trial motions on the malpractice claim. Because we conclude that the courts below erred in holding that Bonds failed to perfect his security interest, it is unnecessary for us to reach the merits of Mills' malpractice appeal.

## II.

As indicated, the courts ruled as a matter of law that Bonds' security interest was invalid because his address did not appear on his UCC-1 financing statement filed with the Secretary of State. We review conclusions of law de novo. *In re Deutchman*, 192 F.3d 457, 459 (4th Cir. 1999).

The issue of whether North Carolina requires the address of a creditor to appear on a UCC-1 financing statement in order for it to perfect a security interest is a matter determined solely by looking to

North Carolina law. *See Butner v. United States*, 440 U.S. 48, 54 (1978). It appears, however, that the North Carolina courts have never faced this precise issue. In the absence of controlling state law, our function is to predict how the Supreme Court of North Carolina would decide the matter. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 328 (4th Cir. 1996).

The North Carolina statute that was in effect when the facts of this case unfolded[2] read, in pertinent part, as follows:

> (1) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral . . . . (8) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

N.C. Gen. Stat. § 25-9-402.

The bankruptcy court concluded that Bonds' financing statement failed to meet the statutory requirement that the creditor provide an address. Bonds concedes this point, as he must, at least as to the state filing. In addition, the bankruptcy court reasoned that because Bonds' address was completely omitted, he did not substantially comply with the requirements of the statute and the omission could not be passed off as a "minor error." To support these conclusions, the bankruptcy court embarked on a thorough review of cases across the country interpreting similar statutory provisions, and predicted that the North Carolina Supreme Court would reject Bonds' financing statement. However, the bankruptcy court discussed only two North Carolina cases, *Evans v. Everett*, 183 S.E.2d 109 (N.C. Ct. 1971), and *E-B Grain Co. v. Denton*, 325 S.E.2d 522 (N.C. App. 1985).

---

[2]North Carolina revised the statutory requirements for filing financing statements, effective July 1, 2001. N.C. Gen. Stat. § 25-9-702(c).

As the bankruptcy court noted, *Evans* recognized that section 25-9-402 of the General Statutes of North Carolina "adopts a system of notice filing," and the substantial compliance language in the statute reflects the notice function of the filing. 183 S.E.2d at 112.

In *E-B Grain Co.*, the debtor listed its mailing address on the financing statement as "Whitakers, N.C. 27891." 325 S.E.2d at 527. The court held that although the information for the address was incomplete, the address was not misleading and did not "*interfere with the notice function of the filing*." *Id.* (emphasis added). The bankruptcy court concluded *E-B Grain Co.* is different from the instant case because Bonds' financing statement provided no information regarding his address. The bankruptcy court reasoned that the complete omission of an address cannot be considered substantial compliance or a minor error because it fails to comply with an express statutory requirement. We disagree.

While the bankruptcy court is correct that Bonds' complete omission of his address cannot be considered substantial compliance with the single clause in the statute that requires the inclusion of the creditor's address, we think this takes too narrow a view of substantial compliance with the statutory section as a whole. Substantial compliance needs to be evaluated through the prism of the North Carolina Supreme Court's language in *Evans* that the purpose of the filing statute is to provide notice. Here, the financing statement complied with virtually all of the stated requirements. It included the names of the debtor and the secured party, it was signed by the debtor, it provided a mailing address for the debtor, and it contained a statement indicating the type of collateral that was involved. Taken together, we think the information in the financing statement substantially complied with the statutory requirements. We have found no authority for the proposition implicitly advanced by the bankruptcy court that in every instance there must be substantial compliance with each separate clause of the filing statute, although we agree that some omissions, in some situations, may be fatal to the validity of the document.

Most importantly, the filed financing statement put future creditors on notice that Bonds had a security interest in BDI's assets. If an existing or potential creditor wanted to obtain more information concerning the secured transaction from the secured party, it could take

the unremarkable step of tracking down Bonds, a man who had been in business in Cabarrus County for decades. The bankruptcy court reasoned that the omission of Bonds' address "prevents the financing statement from serving one of the purposes expressly stated in the statute, i.e., giving the location of the source from which 'information concerning the security interest may be obtained.'" *In re Bonds Distributing Co.*, No. 97-52130C-7W, 2000 WL 33673768, at \*11 (Bankr. M.D.N.C. Mar. 31, 2000) (citation omitted). This statement, however, is factually incorrect. The omission of an address does not "prevent" a person from ascertaining information about Bonds; the omission simply obligates the inquirer to go through an additional step. That was precisely what the North Carolina Court of Appeals authorized in *E-B Grain Co.* The debtor provided only a city, state and zip code. The creditor had to either track down a more complete address or make a different inquiry about the interests shown on the UCC filing. In this case, a telephone call to the Office of the Register of Deeds for Cabarrus County would have been sufficient.[3] A slightly more sophisticated researcher could have used existing databases for a name only search. Nothing more would have been necessary. This point is dramatized by noting that under the new North Carolina law a creditor's address is no longer a threshold requirement for the effectiveness of a financing statement. *See supra* note 2 and N.C. Gen. Stat. § 25-9-502. Professors White and Summers state that "[t]he omission of addresses from [revised Article 9] is a statement of the drafters that 9 times out of 10, or perhaps 999 out of 1000, no diligent searcher needs this information." 4 James J. White & Robert S. Summers, Uniform Commercial Code 114 (4th ed. Supp. 2000). Therefore, from the perspective of providing notice, *E-B Grain Co.* is virtually indistinguishable from the case at bar.

We think the recent changes in North Carolina's version of UCC Article 9 provide additional support for Bonds' position. The new statute does not require an address for either the debtor or the secured

---

[3]It is worth noting that counsel for the Trustee admitted at oral argument that if he were advising a client and discovered Bonds' name on the financing statement without an address, he would attempt to find it. As part of this investigation, counsel conceded that he would look to the County filing. This relatively painless inquiry would have turned up Bonds' address.

party as a condition precedent to the sufficiency of the financing statement. While the filing office may reject a statement that does not provide an address, if the office accepts the financing statement, it is, nonetheless, effective. To reiterate, under current law, if Bonds tendered a financing statement containing no address and the filing office, as in this case, accepted it for filing, the security interest would be perfected.

Comment Five to section 25-9-516 of the General Statutes of North Carolina explains the need for an address on a financing statement. It states that the function of the address requirement "is not to identify the secured party of record but rather to provide an address to which others can send required notifications, e.g., of a purchase-money security interest in inventory or of the disposition of collateral." This comment reveals that the major purpose of the address requirement is not to protect the interests of those who are dealing with the debtor, like, for instance, the Trustee here, but, rather, to facilitate the secured party's receipt of notice of third-party actions adversely affecting the collateral. In other words, the address requirement is designed to protect secured creditors like Bonds.

Another North Carolina case that may be instructive on the issues in this litigation is *Provident Finance Co. v. Beneficial Finance Co.*, 245 S.E.2d 510 (N.C. Ct. App. 1978). In *Provident*, a husband was listed as the debtor on a filed financing statement, but the financing statement was signed by the debtor's wife. The court held that the financing statement was ineffective because the debtor did not sign the statement as required by section 25-9-402. The Trustee argues that *Provident* demonstrates that North Carolina courts would take a strict view of the requirements outlined in the filing statute. The debtor in *Provident* argued that the wife who signed the statement was acting as the husband's agent. In rejecting that argument, the court reasoned that "because financing statements only perform a notice function, we believe that any agency status should be obvious on the face of the financing statement. In this case, there is no indication of any agency relationship between [the wife] and [the husband]." *Id.* at 515. Here, on the other hand, there is no confusion regarding the identity of the secured creditor, and any researcher would be certain that Bonds alone was the secured person. In fact, *Provident* reenforces the theory that North Carolina courts view notice as the sine qua non of financ-

ing statements. Bonds' financing statement provides adequate notice to a researcher that he is a secured creditor.

Furthermore, a recent bankruptcy court case in this circuit supports the theory that non-misleading mistakes on the financing statement should not nullify a security interest when general notice is otherwise provided. *In re Lea Lumber & Plywood L.L.C.* involved an adversary proceeding wherein the trustee claimed that a debtor did not "sign" the UCC-1 financing statement because the name of the corporate debtor's agent was absent and the signature that did appear was not accompanied by any indication that the signature was affixed in the capacity of an officer of the debtor's designated manager. The bankruptcy court, affirmed by the district court, rejected this argument, reasoning, in part, that "[t]he financing statement places full and accurate notice of [the creditor's] security interest on the public record, thereby serving its intended purpose under the Uniform Commercial Code." 266 B.R. 342, 439 (Bankr. E.D.N.C. 2001), *aff'd by Callaway v. Hudson Untied Bank, N.A.*, No. 5:01-CV-386-B0(3) (W.D.N.C. Mar. 29, 2002). In addition, the court concluded that because the financing statement simply serves a notice function to the universe of creditors and potential creditors, "[t]his commercial reality tips the scales against using technical mistakes to undercut the secured creditor's position." *Id.* We find this reasoning sound and apply it to the purported "mistake" at issue here.

## III.

In sum, we think that if the North Carolina courts were faced with the issue in this case, they would reaffirm their view that UCC financing statements exist to provide notice that a secured creditor exists. Viewing Bonds' financing statement as a whole it is apparent to us that it placed the world on notice that he was a secured creditor of BDI, and the absence of his address was a minor error that was not seriously misleading to any reasonably diligent researcher. "Invalidating [appellant's] security interest would create a windfall for the general creditors solely because of this slight dereliction. This would be an unjust result. The failure to include the addresses would, at most, have inconvenienced a creditor." *In re French*, 317 F. Supp. 1226, 1228 (E.D. Tenn. 1970) (finding a financing statement valid where the addresses for both the debtor and the secured party were omitted).

We must reverse the judgment of the district court and remand for proceedings consistent with this opinion. Accordingly, this case is

*REVERSED AND REMANDED.*